## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIKE V. MATA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-423 (KAJ) |
| | ) | |
| E. I . DU PONT DE NEMOURS AND | ) | |
| COMPANY, a Delaware corporation; | ) | |
| E. I. DU PONT DE NEMOURS AND | ) | |
| COMPANY, Plan Administrator; and | ) | |
| PENSION AND RETIREMENT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR<br>MOTION FOR SUMMARY JUDGMENT</u>

POTTER ANDERSON & CORROON LLP
Kathleen Furey McDonough (I.D. 2395)
Sarah E. DiLuzio (I.D. 4085)
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Telefax:  (302) 658-1192
kmdonough@potteranderson.com
sdiluzio@potteranderson.com
*Attorneys for Defendants*

Dated: May 1, 2006
727208v4

# TABLE OF CONTENTS

**NATURE AND STAGE OF PROCEEDINGS** .............................................................. 1

**SUMMARY OF ARGUMENTS** .................................................................................... 2

**STATEMENT OF FACTS** ............................................................................................ 3

**ARGUMENT** ................................................................................................................ 11

    **I.  INTRODUCTION** .............................................................................................. 11

        A.  Summary Judgment Standards ..................................................................... 12

        B.  Standard of Review Under ERISA ............................................................... 12

    **II.  PLAINTIFF IS RECEIVING ALL THE BENEFITS DUE TO HIM UNDER THE TERMS OF THE DUPONT PLAN** ............................................ 14

    **III. DEFENDANTS HAVE CONSISTENTLY APPLIED THE TERMS OF THE PLAN AND HAVE NOT BREACHED THEIR FIDUCIARY DUTIES** ............ 16

**CONCLUSION** ............................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Allison v. Dugan,*
    951 F.2d 828 (7th Cir. 1992) ...................................................................................... 13

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ................................................................................................ 12

*Chojnacki v. Georgia-Pacific Corp.,*
    108 F.3d 810 (7th Cir. 1997) ...................................................................................... 13

*Coleman v. Nationwide Life Ins. Co.,*
    969 F.2d 54 (4th Cir. 1992), *cert. denied*, 506 U.S. 1081 (1993) ................................ 14

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101 (1989) ................................................................................................ 13

*Great-West Life & Annuity Ins. Co. v. Knudson,*
    534 U.S. 204 (2002) ................................................................................................ 14

*Huss v. Green Spring Health Servs., Inc.,*
    18 F. Supp. 2d 400 (D. Del. 1998) ............................................................................ 14

*Petr v. Delaware Air Nat'l Guard,*
    C.A. No. 94-327-SLR, 1995 U.S. Dist. LEXIS 14484 (D. Del. Sept. 28, 1995) ............ 12

*Pinto v. Reliance Std. Life Ins. Co.,*
    214 F.3d 377 (3d Cir. 2000) ...................................................................................... 13

*Shaw* v. *Delta Air Lines, Inc.,*
463 U.S. 85 (1983) ....................................................................................................... 16

*Vorpahl v. Retirement Plan for Employees of Union Oil Co.,*
    749 F.2d 1266 (8th Cir. 1984) .................................................................................. 15

*Wiers v. Barnes,*
    925 F. Supp. 1079 (D. Del. 1996) ............................................................................ 12

## STATUTES

29 U.S.C. § 1054(b)(4)(A) ............................................................................................. 15

29 U.S.C. § 1104(a)(1) .................................................................................................. 16

29 U.S.C. § 1104(a)(1)(D) ........................................................................................ 16, 18

29 U.S.C. § 1132(a)(3) ........................................................................................................... 14

ERISA § 502(a)(1)(B) ........................................................................................................... 11

ERISA § 502(a)(3) ................................................................................................................ 11

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Mike V. Mata ("Plaintiff"), a former DuPont employee, filed this action on June 23, 2005, asserting claims under the Employee Retirement Income Security Act ("ERISA") that he is entitled to certain benefits under the DuPont Pension and Retirement Plan and that DuPont breached its fiduciary duties in administering the Pension Plan. At the time Plaintiff filed his original complaint, he had yet to exhaust his administrative remedies. The parties agreed to extend the time that Defendants had to respond to the complaint until the DuPont Board of Benefits and Pensions had an opportunity to consider Plaintiff's administrative appeal. Following the Board's final decision upholding the denial of Plaintiff's request for early retirement pension benefits, Plaintiff filed an amended complaint on October 10, 2005. The Defendants E. I. du Pont de Nemours and Company ("DuPont"), E. I. du Pont de Nemours and Company, Plan Administrator ("Plan Administrator"), and the DuPont Pension and Retirement Plan ("the Plan") (collectively, "Defendants") responded, denying that Plaintiff is entitled to any benefits in addition to those he is currently receiving or that they breached their duties to plaintiff. The partied exchanged written discovery and Plaintiff was deposed.

Based on the facts adduced through discovery and the law under ERISA, Defendants have filed a motion for summary judgment. This is Defendants' Opening Brief in support of that motion.

## SUMMARY OF ARGUMENTS

I.    Summary judgment is appropriate in this case.  Plaintiff is unable to support his claims under the factual record and as a matter of law.  Further, the DuPont Board of Benefits and Pensions did not abuse its discretion in denying Plaintiff's claims under the DuPont Pension and Retirement Plan.

II.   Plaintiff is currently receiving all of the benefits to which he is entitled under the clear and unambiguous terms of the DuPont Pension and Retirement Plan.

III.  Defendants have consistently applied the terms of the Plan and have not breached their fiduciary duties.

## STATEMENT OF FACTS

Plaintiff was employed by DuPont in the Performance Coatings business for a number of years until his employment was terminated for lack of work on June 30, 2004. (A17).[1]   As a DuPont employee, Plaintiff was entitled to certain benefits, including participation in the DuPont Pension and Retirement Plan ("the Plan"). (A20, A47-A52)

The Pension and Retirement Plan

All full-service DuPont employees are eligible to participate in the Plan beginning on their first day of employment with DuPont. (A58)  The Plan allows for both "normal retirement" benefits and "early retirement" benefits. (Id.)  Normal retirement age is defined by the Plan as 65 years old. (Id.; A84)  Section V of the Plan defines normal retirement benefits and sets forth the criteria used to determine when employees become eligible to receive an unreduced pension. (A90-A92)  Generally, if an employee is at least 58 years old and has 27 years of pension eligible service with DuPont, he is entitled to an unreduced pension benefit. (A64)  Otherwise, an employee will begin to receive unreduced pension benefits upon reaching normal retirement age. (A58)

Another section of the Plan, Section IV, defines the parameters of the early retirement pension benefit. (A84-A90)  A DuPont employee is eligible for an early retirement pension benefit if he is at least 50 years old and has 15 years of pension eligible service with DuPont. (A85; A58)  The early retirement pension benefit is a reduced benefit and the reduction factor is defined by the Plan, depending upon an employee's age and years

---

[1]  Deposition transcripts and other pertinent documentary evidence are included in Defendants' Appendix to its Opening Brief in Support of its Motion for Summary Judgment, filed contemporaneously herewith, and referred to herein as "A__".

of pension eligible service. (A86; A58)  For example, an employee who retires at age 50 with 15 years of pension eligible service will receive 50% of his pension benefit. (Id.)

The Plan documents define "service" to mean "the length, in years and fractions of a year, of an employee's period of 'continuous service' for computing the amount of a pension as determined under the provisions of the Company's Continuity of Service Rules …." (A98-A101)  The Plan further states, with regard to acquisitions, that DuPont "may grant pension, deferred pension or survivor pension benefit rights under this Plan in recognition of those which had been accrued under the pension or retirement plan of another company ….." (A103-A104 (emphasis supplied))  Finally, the Plan allows DuPont to "prescribe reasonable rules under this paragraph for each acquisition, such rules to be uniformly applicable to all employees and former employees affected thereby." (Id.)  The Summary Plan Description, which is provided to all DuPont employees, also references the Continuity of Service Rules. (A76)  The Continuity of Service Rules define eligible service as service "to the extent specified by the DuPont Company's Board of Benefits and Pensions or its delegate with any of the following companies . . . [companies] which were acquired in whole or in part, by the DuPont Company subsequent to January 1, 1920." (A107)  In those cases where DuPont acquires another entity, the Board of Benefits and Pensions determines to what extent prior service with the acquired entity will be recognized for DuPont Pension Plan purposes. (A103-A104; A113-A118)

None of the Plan documents references an employee's "adjusted service date" for purposes of determining pension eligibility.  An employee's adjusted service date is used by DuPont to determine an employee's seniority and eligibility for other benefits, such as vacation. (A112)

Plaintiff's Prior Employment With Nason

Prior to his employment with DuPont, beginning on May 8, 1989, Plaintiff was employed by a company called Nason Refinish Paint ("Nason"). (A3-A4) Nason was acquired by DuPont on October 31, 1991. (A4) Many Nason employees, including Plaintiff, became employees of the DuPont Performance Coatings business on November 1, 1991. (A5) DuPont recognized Plaintiff's former service with Nason for purposes of seniority, vacation time, and other benefits (other than pension benefits). (A113-A118) Plaintiff's adjusted service date reflected this treatment, and was adjusted to 5/8/89, the date Plaintiff began employment with Nason. (A112; A119)

When DuPont acquired Nason, the DuPont Board of Benefits and Pensions determined that "recognition of service and eligibility for participation in the Pension Plan [will be] from date of acquisition, November 1, 1991." (A116-A118) This determination is consistent with DuPont's policy, which it has consistently enforced throughout the history of the Plan, of not recognizing prior service with an acquired company for purposes of the DuPont Pension Plan, if that company itself did not offer its employees a pension plan. Nason did not offer its employees a pension plan. (A113-A114)

At the time of the acquisition, DuPont communicated to affected employees that Nason service would not be recognized for purposes of eligibility under the DuPont Pension and Retirement Plan. (A120) For most other purposes, including vacation eligibility and service awards, however, Nason service was recognized as DuPont service. (Id.; A116-A118) In a letter sent to "All Nason Employees," dated October 30, 1991, DuPont explained that "we are recognizing Nason service for most of our DuPont benefits -- the most notable exception is DuPont's pension plan." (A120 (emphasis

supplied))  Another letter dated September 25, 1992 provided: "When Nason employees joined DuPont on November 1, 1991, they were granted DuPont service, <u>except for pensions</u> and severance, for their years of Nason employment." (A121 (emphasis added)) Again, this letter was addressed to "Nason Employees." (Id.)  Plaintiff testified that he did not recall receiving these letters until he was denied early retirement pension benefits in May or June of 2004. (A6-A8)  Plaintiff did, however, receive the Plan's Summary Plan Description. (A9-A11)  In any event, during the course of his employment with DuPont, Plaintiff never inquired about his pension benefits and never sought a pension estimate. (A24)

<u>Plaintiff's Application for Early Retirement Pension Benefits</u>

In early 2004, Plaintiff began to hear rumors that there would be a reduction in force in the Performance Coatings business. (A17-A18; A31)  By April 2004, DuPont solicited employees who wished to be included within the reduction in force to express their interest, in exchange for which they would be eligible to participate in the career transition program and receive severance pay. (A18-A19; A138)  Plaintiff signed a document entitled "Expression of Interest To Be Terminated For Lack of Work" on April 21, 2004. (Id.)  That document provides, at paragraph 1: "I wish to be considered for involuntary termination of my employment with DuPont." (Id.)

Also in early 2004, for the first time in his more than twelve years of service with DuPont, Plaintiff requested and received a pension estimate. (A47-A52)  The Pension Estimate Statement Plaintiff received is dated January 23, 2004 and indicates that it was requested on that date. (Id.)  However, Plaintiff testified that this date is inaccurate and that he did not receive the estimate until May or June of 2004 when he was advised to

request it in connection with his impending termination. (A29-A33) In any event, the Estimate clearly identifies Plaintiff's "Benefit Service" as 12.5 years, which corresponds with the November 1, 1991 date that Plaintiff's DuPont employment commenced, following the Nason acquisition. (A48) The benefit service is distinct from Plaintiff's "adjusted service date," which is listed as 5/8/1989. (Id.) The Estimate also identifies Plaintiff's "Benefit Commencement Date" as 8/1/2011, which is the first of the month following Plaintiff's 60th birthday, and "Earliest Unreduced" benefit commencement date as 8/1/2016, which is the first of the month following his 65th birthday. (A34-A35) As outlined in this document, Plaintiff will indeed receive pension benefits under Section V of the Plan upon reaching normal retirement age. (Id., A36)

After having signed the Expression of Interest, Plaintiff was discussing his impending termination with coworkers and learned for the first time that he may be eligible for early retirement benefits because he was over 50 years old and had just celebrated his 15th service anniversary with DuPont. (A20-A21) Plaintiff testified "that's the first inkling I had" that he could be eligible for early retirement. (A21) Plaintiff had never before inquired about receiving an early retirement pension from DuPont[2]. (A24) It was not until Plaintiff's co-worker and friend, Alan McConachie, mentioned the possibility of early retirement to Plaintiff at the end of May or early June 2004 that Plaintiff even considered the fact that the DuPont Plan offers early retirement

---

[2] In fact, Plaintiff had not done any retirement planning. He did not have an individual retirement account, did not contribute regularly to his 401(k), and did not even have a savings account to speak of. (A13-A14) He testified that he had filed personal bankruptcy in 2000 and that generally, since 1997 when he lost "every penny he ever worked for" in a domestic legal dispute, he has been in financial straights. (A12-A15) Indeed, after his termination from DuPont, Plaintiff quickly dissipated his DuPont Savings and Investment Plan. (A16-A17)

benefits. (A20-A21) Indeed, when asked when he first inquired about receiving as early retirement pension benefit, Plaintiff testified:

> As soon as I found out that I might be able to get it.
> And when was that?
> When – the McConachie comment.

(A25) Mr. McConachie was in marketing and, as Plaintiff himself testified, "not in a position of authority." (A21, A23) Following Plaintiff's conversation with Mr. McConachie, Plaintiff contacted the human resources representative for the Performance Coatings business, Patty Drysdale. (A22) Ms. Drysdale encouraged Plaintiff to contact DuPont Connection, the administrator of the Plan, and apply for an early retirement pension. (A26-A27)

Plaintiff called DuPont Connection within the week and was <u>immediately</u> informed that he did not have the requisite 15 years of pension eligible service to be able to receive early retirement benefits. (A27) Plaintiff then complained to Ms. Drysdale and his manager. (A27) It is at this point that Plaintiff believes he first saw the October 30, 1991 and September 25, 1992 letters, which were sent to "All Nason Employees," because Ms. Drysdale easily produced them to Plaintiff as explanation for DuPont Connection's denial of his request for early retirement benefits. (A27) On May 31, 2005, Plaintiff submitted a "Level 1" appeal to DuPont Connections regarding the denial of his early retirement benefits, claiming it had not been adequately explained to him that his prior service with Nason would not be included for pension eligibility purposes. (A122-A124; A125-A126) The very next day, before DuPont Connection had an opportunity to respond to Plaintiff's appeal, Plaintiff submitted a letter to the DuPont Board of Benefits and Pensions requesting a "Level 2" appeal. (A127) Initially, the

Board accepted the appeal because, on its face, Plaintiff's letter stated that he had completed his Level 1 appeal. (A128) Once it became clear that Plaintiff had not, in fact, completed his Level 1 appeal, the Board wrote to Plaintiff and informed him that his Level 2 appeal would be withdrawn, but that, in the event his Level 1 appeal was denied, he could then submit a Level 2 appeal that would be considered by the Board. (A129) On June 28, 2005, DuPont Connection did deny Plaintiff's appeal, writing "for purposes of pension service, the time you were employed by Nason, from May 8, 1989 through October 31, 1991, cannot be credited." (A130-A131) Plaintiff then properly initiated a Level 2 appeal. (A132-A134) The Board of Benefits and Pensions reviewed Plaintiff's Level 2 appeal and issued its decision on September 27, 2005, concluding: "Your appeal for eligibility to retire under Section IV of the DuPont Pension and Retirement Plan [] is denied." (A135-A137) The Board's decision concluded Plaintiff's rights of appeal within DuPont.

As explained in the Board's decision, at the time of his termination, Plaintiff was 53 years old, and thus met the age requirement of Section IV of the Plan. (A135-A137) Plaintiff did not, however, satisfy the 15 year eligibility requirement. (Id.) In June 2004, when Plaintiff was terminated, he had completed 15.15 years of combined service with Nason and DuPont, but had completed only 12.67 years of service with DuPont. (Id.) Under the terms of the Plan, Continuity of Service Rules, and Service Recognition document for Nason employees, Plaintiff had only 12.67 years of pension eligible service for purposes of Section IV of the Plan. (A84-A90; A105-A111; A116-A118) Pursuant to Section V of the Plan, however, Plaintiff does have a deferred vested pension benefit,

payable when he reaches the age of 60 years old. (A90-A97) He simply is not eligible for early retirement benefits.

<u>Other Former Nason Employees</u>

In his Complaint, Plaintiff identifies two alleged comparators, Larry Sayer and William McConachie, who were also Nason employees and who, according to Plaintiff, nonetheless received "full pension benefits." (D.I. 9) In his discovery requests Plaintiff then identified several other former Nason employees, Robert Thompson, Robert Nepote, John Vance, Frank Smith, and Wayne Neet. (A139-A140) These individuals were former Nason employees who, like Plaintiff, became DuPont employees in connection with the acquisition. (A37-A46)

As is true for Plaintiff, for purposes of the DuPont Pension Plan, the pension eligible service date for each of these individuals is November 1, 1991, the date they became DuPont employees. (A142) DuPont has not recognized any prior service with Nason as eligible service under the Plan. (A142) Furthermore, although these individuals are, or will be, receiving pension benefits under Section V of the Plan (as Plaintiff will when he reaches normal retirement age), none received early retirement pension benefits under Section IV. (A142) Thus, Defendants have consistently applied the terms of the Plan, Continuity of Service Rules, and Service Recognition document for former Nason employees. (A142)

## ARGUMENT

### I.    INTRODUCTION

Plaintiff has brought this action under ERISA, claiming entitlement to early retirement benefits and alleging that DuPont breached its fiduciary duties by failing to recognize Plaintiff's prior service with an acquired company, Nason, as eligible service for pension eligibility and calculation purposes. *See* ERISA § 502(a)(1)(B); ERISA 502(a)(3).

Plaintiff's claims are without merit as a matter of fact and as a matter of law. Plaintiff is not entitled to an early retirement benefit under the clear terms of Section IV of the DuPont Pension and Retirement Plan. The Plan, Continuity of Service Rules, and Service Recognition document for Nason employees establish the method by which Plaintiff's pension eligibility was determined. There can be no dispute that Plaintiff's eligibility for a pension benefit was determined in accordance with the terms of the Plan documents. Plaintiff nonetheless asserts that he is entitled to relief because he expected his Nason service to count towards pension eligibility. Plaintiff has absolutely no basis for this expectation, having never inquired about his pension benefits.

Furthermore, this is not a case in which Plaintiff alleges that he was misinformed in any way or otherwise allegedly relied on the assumption that he would be entitled to an early retirement pension benefit to his detriment. Plaintiff never engaged in retirement planning, nor did he ever inquire about his pension benefits. In any event, Plaintiff could not have altered his retirement planning in any way that would have enabled him to become eligible for an early retirement benefit.

11

### A.    Summary Judgment Standards

Summary judgment is required where "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." *Wiers v. Barnes,* 925 F. Supp. 1079, 1085 (D. Del. 1996) (citing Fed. R. Civ. P. 56(c)).  Further, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

As this Court has recognized, "the mere existence of *some* evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue." *Petr v. Delaware Air Nat'l Guard*, C.A. No. 94-327-SLR, 1995 U.S. Dist. LEXIS 14484, at *4 (D. Del. Sept. 28, 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (emphasis added) (Exhibit A hereto). Thus, a defendant is entitled to summary judgment if it can demonstrate a complete failure of proof concerning an essential element of plaintiff's claim, so as to render all other facts immaterial. *Celotex*, 477 U.S. at 322-23.

### B.    Standard of Review Under ERISA

With respect to the Court's review of the decision of DuPont's Board of Benefits and Pensions interpreting the Plan and Service Recognition document for Nason

12

employees, the Supreme Court has stated that, where an ERISA plan gives the plan administrator discretion to determine eligibility for benefits and to construe the terms of the plan, the appropriate standard of review for a trial court to apply is abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). In other words, a trial court should only overrule a plan administrator's determination if that determination is "arbitrary and capricious." *See Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 387 (3d Cir. 2000) (holding that an administrator's decision will be overturned only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law" and noting that the Court is not free to substitute its own judgment in determining eligibility for benefits). *See also Allison v. Dugan*, 951 F.2d 828, 832 (7th Cir. 1992) (arbitrary and capricious standard applicable where plan authorizes the plan administrator to administer and interpret the plan). Further, the Plaintiff bears the burden of proving that a plan administrator's determination is arbitrary and capricious. *See Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 816 (7th Cir. 1997).

> The DuPont Pension and Retirement Plan provides in Section II:
>
> The administration of this Plan is vested in the Board of Benefits and Pensions appointed by the Company. The Board may adopt such rules, or delegate to one or more persons its authority to make initial determinations, as it may deem necessary for the proper administration of the Plan. The Board of Benefits and Pensions retains discretionary authority to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan. . . .

(A84).

Therefore, the determination of the Board of Benefits and Pensions with respect to Plaintiff's eligibility for early retirement pension benefits is governed by the abuse of discretion / arbitrary and capricious standard set forth in *Firestone*.

## II.    PLAINTIFF IS RECEIVING ALL THE BENEFITS DUE TO HIM UNDER THE TERMS OF THE DUPONT PLAN.

The U.S. Supreme Court has concluded that ERISA provides a statutory scheme so comprehensive that the Court has been "especially 'reluctant to tamper with (the) enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (citations omitted).

> ERISA authorizes civil actions:
>
> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . .

29 U.S.C. § 1132(a)(3).

As this Court succinctly has stated, § 1132(a) permits the following relief to an individual beneficiary: "'accrued benefits due, a declaratory judgment on entitlement to benefits, . . . an injunction against a plan administrator's improper refusal to pay benefits[,] . . . [and] removal of the fiduciary.'" *Huss v. Green Spring Health Servs., Inc.*, 18 F. Supp. 2d 400, 408 (D. Del. 1998) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987)).

Federal Courts have concluded that interpretation of the language of an ERISA plan should be made according to its plain meaning. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 56-57 (4th Cir. 1992), *cert. denied*, 506 U.S. 1081 (1993).

The DuPont Plan provides the method by which Plaintiff's pension benefits are to be calculated, in conjunction with the Continuity of Service Rules and the Service Recognition document for Nason employees. Defendants clearly have the authority to

14

adopt such policies and to apply such policies in interpreting the Plan. The Plan provides that "the Board may adopt such rules . . . as it may deem necessary for the proper administration of the Plan. The Board of Benefits and Pensions retains discretionary authority to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan." (A84) The Plan further provides, with respect to acquisitions of other companies by DuPont, that pension benefits *may* be granted to persons who transfer employment from an acquired company to DuPont and that DuPont may "prescribe reasonable rules under this paragraph for each acquisition, such rules to be uniformly applicable to all employees and former employees affected thereby." (A84)

The Plan simply does not afford Plaintiff the benefits he seeks. There is no ambiguity in the language of the Plan or the Service Recognition document for Nason employees – Plaintiff's years of service with Nason prior to joining DuPont and becoming entitled to participate in a retirement plan are not included within his "pension eligible" service for purposes of determining his eligibility for early retirement pension benefits under Section IV of the DuPont Plan. DuPont has consistently applied this decision to all former Nason employees. (A142)

DuPont's decision not to recognize prior service with a company that did not itself offer its employees a pension plan is also consistent with applicable law. ERISA's benefit accrual requirements define "years of participation" as the period of service beginning at "the earliest date on which the employee is a participant in the plan." 29 U.S.C. § 1054(b)(4)(A); *see also Vorpahl v. Retirement Plan for Employees of Union Oil Co.*, 749 F.2d 1266 (8th Cir. 1984). Plaintiff was not a "participant in the plan" until

15

November 1, 1991, following DuPont's acquisition of Nason. Indeed, prior to that date, there was no "plan" that Plaintiff could participate in.

Although he is not eligible for early retirement benefits, Plaintiff will receive his vested, deferred pension benefits under Section V of the Plan when he reaches normal retirement age. He is not entitled to more.

## III.    DEFENDANTS HAVE CONSISTENTLY APPLIED THE TERMS OF THE PLAN AND HAVE NOT BREACHED THEIR FIDUCIARY DUTIES.

Plaintiff's claim that Defendants breached their fiduciary duties also fails. In general terms, fiduciary responsibility under ERISA is simply stated. The statute provides that fiduciaries shall discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). In addition, fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). An employer's decisions regarding the composition or design of the plan itself, including the determinations of the form or structure of the plan such as who is entitled to receive plan benefits and in what amounts, or how such benefits are calculated, do not implicate the employer's fiduciary duties. *See Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983) (describing how ERISA does not mandate that "employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits").

Thus, Defendants cannot be found to have violated their fiduciary duties by consistently applying the terms of the Plan. Plaintiff can point to no irregularity; Defendants did not misinform him. DuPont's records are clear that Plaintiff's Nason service was not included in his "pension eligible" service. Even if Plaintiff did not receive the October 30, 1991 letter advising him, prior to joining DuPont, that his Nason

16

service would not be recognized by DuPont for purposes of the pension plan, he was provided with the Summary Plan Description, which should have put him on notice of this fact. Moreover, Plaintiff did not receive any information to the contrary. Indeed, a year after the Nason acquisition, DuPont again communicated with former Nason employees, reminding them that their Nason service would not be recognized to determine eligibility under the Plan. (A121) Again, that Plaintiff conveniently claims not to have received this document either is of no moment. The Plan documents are clear and Plaintiff can point to no evidence that he received inaccurate or misleading information. In addition to the Plan documents, DuPont's records in this regard were equally clear. (A112) Had Plaintiff ever been interested enough to inquire about his pension benefits, he would have been informed, as he was in May 2004, that his prior Nason service was not "pension eligible" service.

Indeed, Plaintiff never even requested a pension estimate until his termination was imminent. The pension estimate Plaintiff did receive[3] accurately informed him about his pension eligible service. (A47-A52) Plaintiff himself did not even consider that he might be entitled to an early retirement pension until after he had signed an Expression of Interest volunteering for termination and a coworker mentioned in jest that he may have come in "just under the wire." (A21) Plaintiff labored under this misapprehension for less than a week, because when he called DuPont Connections they immediately informed him that he was not eligible for an early retirement pension. (A28)

_____

[3] That Plaintiff again claims this document was not provided to him on the date indicated is irrelevant. Plaintiff's testimony is clear that he did not even consider the availability of early retirement benefits until he had a conversation with a coworker in May 2004, after having signed the Expression of Interest. (A21)

In short, there is no evidence that anyone within DuPont misrepresented the status of Plaintiff's pension benefits to him or that Defendants otherwise acted in violation of their duties to plan participants. Indeed, were Defendants to grant Plaintiff the benefits he seeks in contravention of the clear terms of the Plan documents, they would then be acting outside of their duties to all plan participants to fairly and consistently apply the terms of the Plan. *See* 29 U.S.C. § 1104(a)(1)(D) (requiring fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan").

## CONCLUSION

For the foregoing reasons, Plaintiff's claim fails as a matter of law and Defendants E. I. du Pont de Nemours and Company, E. I. du Pont de Nemours and Company, Plan Administrator, and the DuPont Pension and Retirement Plan are entitled to summary judgment.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_
Kathleen Furey McDonough (I.D. 2395)
Sarah E. DiLuzio (I.D. # 4085)
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Telefax: (302) 658-1192
kmdonough@potteranderson.com
sdiluzio@potteranderson.com
*Attorneys for Defendants*

Dated: May 1, 2006
727208v3

19

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify this 1st day of May, 2006, I caused the foregoing **OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to be electronically filed with the U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) and served a copy upon counsel of record in the following manner:

**<u>Via Hand Delivery</u>**
John M. Stull (No. 568)
1300 North Market Street
Suite 700
P.O. Box 1947
Wilmington, DE 19801


*Sarah E. DiLuzio*

Kathleen Furey McDonough (I.D. 2395)
Sarah E. DiLuzio (DSB ID No. 4085)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Post Office Box 951
Wilmington, Delaware 19899-0951
Tel: (302) 984-6000
E-mail: sdiluzio@potteranderson.com
*Attorneys for Defendants*

727208v3