# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIKE V. MATA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-423 (KAJ) |
| | ) | |
| E. I . DU PONT DE NEMOURS AND | ) | |
| COMPANY, a Delaware corporation; | ) | |
| E. I. DU PONT DE NEMOURS AND | ) | |
| COMPANY, Plan Administrator; and | ) | |
| PENSION AND RETIREMENT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## APPENDIX TO DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### VOLUME II

POTTER ANDERSON & CORROON LLP
Kathleen Furey McDonough (I.D. 2395)
Sarah E. DiLuzio (I.D. 4085)
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Telefax:  (302) 658-1192
kmdonough@potteranderson.com
sdiluzio@potteranderson.com
*Attorneys for Defendants*

Dated: May 1, 2006
730195

## TABLE OF CONTENTS

Exerpts from the Deposition Transcript of Mike V. Mata, dated 03/16/06 .............................. A1-A46

Pension Estimate, dated 01/23/04 .................................................................................. A47-A52

Summary Plan Description, dated 07/98 ........................................................................ A53-A82

Excerpts of Pension and Retirement Plan (originally adopted 09/01/1904;
last amended 03/01/98) ................................................................................................ A83-A104

E. I. du Pont de Nemours and Company Continuity of Services Rules (originally
adopted 06/02/1919; last amended 03/01/97) .............................................................. A105-A111

Dupont Employee Status Sheet of Mike V. Mata ........................................................ A112

Revised memorandum from George Hollodick, dated 10/22/91 re:
DuPont Automotive Products Nason Acquisition .......................................................... A113-A115

Memorandum from G. A. Hollodick to F. J. Hutz, dated 10/28/91 re:
Recognition of Nason Service for DuPont Plans and Policies ...................................... A116-A118

Letter to Mike V. Mata, dated 01/31/00 re: Adjusted Service Date ............................ A119

Letter to All Nason Employees, dated 10/31/91 .......................................................... A120

Letter to Nason Employees, dated 09/25/92 ................................................................ A121

Level 1 Appeal Initiation Form, dated 05/31/05 .......................................................... A122-A124

Letter from Mike Mata to DuPont Determination Review Team, dated 05/31/05 ........... A125-A126

Letter from Mike Mata to E. I. DuPont de Nemours and Company, dated 06/01/05 ......... A127

Letter from Andrew F. Lesser to Mike Mata, dated 06/10/05 .................................... A128

Letter from Andrew F. Lesser to Mike Matta, dated 06/22/05 .................................. A129

Letter from DuPont Benefit Determination Review Team to Mike Mata,
dated 06/28/05 .............................................................................................................. A130-A131

Letter from Mike Mata to Dupont Determination Review Team, dated 07/25/05 ........... A132-A134

Decision of the Board of Benefits and Pensions, dated 09/27/05 .............................. A135-A137

Expression of Interest of Mike Mata, dated 04/21/04................................................A138

Plaintiff's First Set of Interrogatories Directed to Defendants, dated 02/24/06 ..............A139-A140

Affidavit of Andrew F. Lesser, dated 05/01/06 .................................................A141-A142

# Pension and Retirement Plan—Administration Information

## VESTED DEFERRED PENSION

If you leave DuPont after you become vested in the Pension and Retirement Plan, but before you are eligible to retire as a pensioner, you are entitled to a vested deferred pension. It is called vested because you have a nonforfeitable right to it, and deferred because payment of the pension is postponed until you become eligible to receive benefits and you apply for benefits. Even if you are eligible for them when you leave, payments do not begin until after you apply for them.

### When You Are Vested

After you complete five years of service, you are vested under the plan. Furthermore, if you are not vested when the Company transfers certain pension plan assets to a health benefits account, as permitted by law, you will vest as of the transfer date or your termination date if you left the Company within the twelve-month period before the transfer.

### Benefit Amount

The amount of your vested deferred pension is calculated according to the pension plan's three formulas. If you choose to begin receiving your pension before you are entitled to unreduced benefits (as shown in the chart), the pension is reduced by 5/12th of 1% for each month before the month you would be entitled to an unreduced benefit.

### When Payments Begin

When you may begin receiving a vested deferred pension payment depends on how much service you have when you leave and on whether you want a reduced or unreduced pension. Here is how it works:

| If This is Your Service When You Leave | Then This is the Age Payments Can Begin | |
|---|---|---|
| | Reduced | Unreduced |
| <THAN 10 YRS | NOT AVAILABLE | 65 AND OVER |
| 10 THRU 14 | 60 THRU 64 | 65 AND OVER |
| 15 THRU 29 | 50 THRU 64 | 65 AND OVER |
| 30 OR MORE | 50 THRU 59 | 60 AND OVER |

For example, if you leave DuPont at age 45 after 24 years of service, you can begin receiving an unreduced benefit after reaching age 65 but can receive a reduced benefit anytime after age 50. The reduction is 5/12th of 1% for each month your payments start before age 65.

Here's how the reduction is calculated, assuming you are age 60 and are eligible to receive a pension of $600 a month five years later, at age 65:

STEP 1:

$$60 \times 5/12\text{TH OF } 1\% = 25\%$$

| NUMBER OF MONTHS BEFORE YOU ARE ELIGIBLE FOR AN UNREDUCED PENSION | x | REDUCTION FACTOR | = | % YOUR PENSION IS REDUCED |
|---|---|---|---|---|

STEP 2:

$$\$600 \text{ MINUS } (25\% \times \$600 = \$150) = \$450$$

| PENSION AMOUNT | - | REDUCTION FACTOR | = | REDUCED PENSION |
|---|---|---|---|---|

# A74

D000149

# Pension and Retirement Plan—Administration Information

When you leave DuPont, if you are eligible for a vested deferred pension, you receive a personal statement showing the amount of your benefit and how to begin receiving it. Generally, you may apply for benefits at any time after you become eligible. Payments begin within three months after you apply. When you become eligible for a vested right to a deferred pension, you are also eligible for pre-payment spouse benefit coverage, described below.

## PRE-PAYMENT SPOUSE BENEFIT COVERAGE UNDER VESTED DEFERRED PENSION

When you become eligible for a vested deferred pension, you are also able to ensure that benefits continue to your spouse after your death. This is true whether or not you are still working at DuPont at the time of your death.

Coverage is automatic under the pre-payment benefit (so called because it provides spouse survivor coverage before you begin receiving pension payments) unless, as a former employee, you and your spouse agree, in writing, to waive it (see "Waiver Rules for Married Participants," page 19). As a former employee, coverage may be revoked, with spousal consent, or reelected at any time. If you are actively employed at DuPont as a full-service employee, this coverage stops when you attain 15 years of service, and you become eligible for the Company-paid survivor benefit (see page 15).

### Amount of Benefit

If you are eligible for deferred pension payments to begin at the time of your death, your spouse receives monthly payments equal to 50% of the amount you would have received had you terminated employment with the spouse benefit coverage in effect and applied for benefits to begin on the day before you died. In calculating the amount payable to your spouse, the reduction for post-payment spouse coverage is included. Payments to your spouse begin the month following the month in which you die and end with the month in which your spouse dies.

If you are not yet eligible for deferred pension payments to begin on the date of your death, your spouse receives monthly payments equal to 50% of the amount you would have been eligible to receive had you terminated employment with the spouse benefit coverage in effect on the day before you died and applied for a reduced monthly benefit to begin on the earliest date you would have become eligible for a benefit. In calculating the amount payable to your spouse, the reduction for post-payment spouse coverage is included. Payments to your spouse begin the month following your earliest benefit commencement date. Benefits end the month in which your spouse dies.

### Cost of Pre-Payment Benefit

The cost of providing this benefit coverage is paid entirely by DuPont.

D000150

# Pension and Retirement Plan—Administration Information

## POST-PAYMENT SPOUSE BENEFIT COVERAGE UNDER VESTED DEFERRED PENSION

The federal law that requires a survivor benefit be made available to the spouses of married pensioners also requires that spouse survivor benefits be available to terminated vestees who are receiving a deferred pension payment from DuPont.

If you are married when your deferred pension payments begin, coverage is automatic under the post-payment spouse benefit coverage (that is after you begin receiving deferred pension payments) unless you and your spouse agree, in writing, to waive it (see "Waiver Rules for Married Participants").

You may not revoke or reelect this coverage after your pension payments begin. If, after your deferred pension payments begin, your spouse dies before you do, no survivor benefits are payable under this option and your deferred pension payment is not readjusted.

### Amount of Benefit

If you die while receiving a deferred pension payment with the spouse survivor coverage in effect, your spouse receives monthly payments equal to 50% of the amount you were receiving at the time of your death. At your spouse's death, all payments under this coverage stop.

### Cost of Post-Payment Benefit

You pay for post-payment spouse coverage through an actuarial reduction in your own monthly deferred pension payment. The amount your monthly pension payment is reduced depends on your age and the age of your spouse at the time payment begins and on the plan's investment-return rate. For more details on how this reduction is made, see the "Frank Warren" example.

## BREAKS IN SERVICE AND COMPUTATION PERIODS

DuPont has continuity-of-service rules to determine how employment interruptions—called breaks in service—affect your pension. The wording of these rules govern, however, the following highlights provide a general understanding of how they work.

You do not have a break in service for periods when you are away from work for:

- excused absences of no more than 16 consecutive days;

- occupational or non-occupational disability;

- vacation;

- approved leave for temporary duties outside the Company;

- annual training with the Reserve forces or National Guard;

**A76**

D000151

# Pension and Retirement Plan—Administration Information

- active military service and training, provided you return to DuPont within prescribed time limits;
- voluntary leave of absence to save another employee's job at a site where there are excess employees;
- leave of absence with full or part pay.

The Employee Retirement Income Security Act of 1974 (ERISA) also sets some minimum service credit standards for determining when you become eligible for a vested deferred pension.

You are credited with a year of service if you are paid for at least 1,000 hours in a computation period. A "computation period" means a 12-consecutive-month period beginning the later of:

- January 1, 1976; or
- your first day of employment (or reemployment); or
- January 1 of the year following employment (or reemployment)

You have a break in service for any computation period in which you earn less than 501 hours of service. If you have a break in service, your prior service is restored and your service date is adjusted accordingly when you are reemployed.

This ERISA minimum service credit standard has little impact on full-service employees.

For Family Leaves beginning on or after January 1, 1985, you are credited with up to 501 hours in a computation period in order to avoid a break in service.

## IF YOU ARE REEMPLOYED

**Before retirement:**
If you leave DuPont and are later rehired, you once again become a plan participant and begin earning service. Also, for those rehired on or after March 1, 1997, your credit for your prior service is restored for both vesting and benefit calculation purposes. If you left the Company under the Voluntary Separation/Retirement Program (Section XI of the Pension Plan) and received the value of your pension benefits as a lump-sum payment, prior service will be restored for vesting purposes only.

When you subsequently retire or terminate employment, your right to a pension and the amount of your pension is determined based on your second period of employment plus the service that was restored from your first period of employment.

**After retirement:**
Once you retire and begin receiving pension payments, you may be reemployed only after approval of the Board of Benefits and Pensions. Generally, your pension payments are suspended during any period of full-time reemployment. When you again retire or terminate, DuPont recalculates your pension, taking into account your pay and service during the time you were reemployed. You may elect to take either the newly determined pension or to resume your original pension.

# Pension and Retirement Plan—Administration Information

## APPLYING FOR BENEFITS

In order to apply for retirement, it is recommended that you notify DuPont Connection (800-775-5955) of your plans at least 90 days before your retirement date so that your pension application can be processed in a timely fashion.

## PLAN NAME AND IDENTIFICATION NUMBERS

The formal name of the plan is the DuPont Pension and Retirement Plan. In any formal correspondence about the plan, refer to the Employer Identification Number assigned by the Internal Revenue Service. **DuPont's number is EIN 51-0014090.** The official plan number is 001.

## TYPE OF PLAN AND PLAN YEAR

The plan is a defined benefit pension plan. Records for the plan are maintained on a calendar-year basis.

## PLAN ADMINISTRATION AND FUNDING

Legal process may be served on E. I. DuPont de Nemours and Company, 1007 Market Street, Wilmington, DE 19898, as Plan Administrator.

The Company makes contributions to the Pension Trust Fund as necessary in order to meet the current and actuarially projected obligations of the plan.

Pension benefits described in the Pension and Retirement Plan are paid solely from the Pension Trust Fund, except as otherwise required by law.

The trustee for the Pension and Retirement Plan is Wilmington Trust Company, Wilmington, DE 19899.

Benefits are paid to retirees and beneficiaries directly from the Trust Fund. The paying agent is Bankers Trust Company.

The Board of Benefits and Pensions has the full authority to interpret and apply the provisions of the Plan document.

## QUALIFIED DOMESTIC RELATIONS ORDER

Generally, plan benefits are paid only to you or possibly your beneficiaries or survivors. However, an exception to this may be made as a result of a qualified domestic relations order "QDRO."

A domestic relations order is a court-ordered payment of benefits in connection with a support order, divorce, legal separation, or custody case. This means the plan trustee may be obligated to pay part of your plan benefit to someone else—for example, your former spouse, children, or other dependent—to comply with such an order.

There are specific legal requirements the domestic relations order must meet to be recognized by the Plan Administrator and specific procedures regarding the amount and timing of payments. If you are affected by such an order, you will be notified by the Plan Administrator.

A78

D000153

# Pension and Retirement Plan---Administration Information

## LIENS

Except for federal tax liens initiated by the IRS, no lien may be created on any of the funds, securities, or other property held under the Plan, and any attempt to pledge, encumber, or change any of the funds, securities, or other property held under the Plan shall be void.

## INSURED BENEFITS

Certain benefits under this plan are insured by the Pension Benefit Guaranty Corporation (PBGC) in the event the plan terminates. Generally, the PBGC guarantees most vested normal retirement benefits, early retirement benefits, and certain disability and spouses' pensions. However, the PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if benefits are increased within the five years before plan termination, the whole amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that the PBGC guarantees, which is adjusted periodically.

This insurance protection is made possible by premiums paid to PBGC each year by employers, including DuPont. For more information on this insurance and its limitations, you may contact the PBGC. Address inquiries to the Office of Communication, PBGC, 2020 K Street, N.W., Washington, D.C. 20006; or call (202) 778-8800.

## MAXIMUM BENEFIT LIMITATION

Federal law limits the amount of pension benefits payable to or on behalf of any individual. Since this limitation generally applies only to highly compensated employees or, in some circumstances, younger employees retiring under the Incapability Retirement provision, anyone whose benefit may be affected is notified individually. Detailed information on the amount of this limitation is contained in the official text of the pension plan.

## IRS APPROVAL

The Plan is qualified under section 401(a) of the Internal Revenue Code and is subject to the continuing approval of the Internal Revenue Service. If IRS regulations change, plan provisions may also change.

## PLAN DOCUMENTS

This summary plan description is intended to provide you with a reasonably thorough explanation of the **Pension and Retirement Plan.** Wherever possible, nontechnical language has been used to explain plan provisions. The official plan texts are The DuPont Pension and Retirement Plan and the Trust Agreement between the Company and the plan trustee. These texts are the governing documents in the event that questions arise.

A79

D000154

# Pension and Retirement Plan—Administration Information

## YOUR RIGHTS UNDER ERISA

Your Pension and Retirement Plan is under the jurisdiction of the Employee Retirement Income Security Act of 1974 (ERISA).

Under the provisions of ERISA, you have certain rights:

- Without charge, you may examine the official plan documents under which the benefits are maintained. You may also examine forms filed with the Internal Revenue Service (such as annual financial reports on Form 5500). These documents and forms are maintained for inspection at Company headquarters (1007 Market Street, Wilmington, DE 19898) and are made available on written request to employment sites or to your supervisor or HR Manager.

- You will receive regular summaries of the annual financial reports for your benefits.

- You may obtain copies of these documents, information, and forms within 30 days by calling DuPont Connection (800-775-5955). You pay the cost of reproducing them.

- If you think the response to your request for material is inadequate, your claim for benefits is incorrectly denied, or the persons responsible for administering the benefits acted improperly—after pursuing your administrative remedies with the Plan Administrator—you may bring legal action.

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in your interest and that of other Plan participants and beneficiaries. No one including your employer, your union, or any other person may fire you or otherwise discriminate against you from obtaining a benefit or exercising your rights under ERISA. If your claim for a benefit is denied, in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the Plan review and reconsider your claim.

DuPont urges you to bring to its immediate attention any questions or problems you have with regard to your benefits. We are committed to ensuring proper treatment and full disclosure of all pertinent information to plan participants. You need not fear that you will be fired or discriminated against in any way due to your attempt to obtain your plan benefits or exercise your legal rights.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such case, the court may require the Plan Administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in

**A80**

D000155

## Pension and Retirement Plan—Administration Information

whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or you may file suit in a federal court. The court decides who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees (for example, if it finds your claim is frivolous).

Questions about your rights under ERISA may be directed to the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W. Washington, D.C. 20210.

## USING ERISA'S CLAIMS PROCEDURES

ERISA requires that the plans it covers include certain procedures for filing claims and for reviewing claims that are denied. The intent is to make sure that all benefit claims are considered fully, clearly, and promptly.

Although DuPont's procedures have provided full and fair consideration of benefit claims for many years, ERISA requires certain formal approaches.

Keep in mind that nothing required by ERISA changes the way DuPont benefits are normally administered. ERISA's claims procedures are available if you feel you aren't getting the benefits you are entitled to through normal channels.

File your claim for benefits in writing with DuPont Connection, P.O. Box 0448, Ft. Lee, NJ 07024-0448. If your claim does not include the correct information, you will be notified, in writing, what you need to do to get your claim processed.

## IF YOUR CLAIM IS DENIED

If your claim is denied, you will be told in writing within 90 days after your claim is received. That reply will include:

- specific reasons for the denial;

- references to the provisions of the benefit plan or practice involved;

- a description of what additional information is necessary and why; and

- a copy of these procedures or comparable information about the steps you need to take to resubmit it.

If the reply cannot be made within 90 days, you will be given a written notice explaining the reasons why. Extensions will not exceed another 90 days.

If your claim for a benefit is denied, you may request a review by the DuPont Board of Benefits and Pensions by writing to DuPont Connection within 60 days of the denial.

**A81**

D000156

# Pension and Retirement Plan—Administration Information

In your request, list the issues and comments you want considered. If you prefer, you may have an authorized representative send in the request on your behalf. You or your representative may, at a reasonable time and place, inspect relevant documents which may affect your claim.

Within 60 days after your request for review is received, you will receive a written response. In the case of a continued denial, you will be given the specific reasons and plan provisions on which the denial is based. If the review cannot be made within 60 days, you will be notified in writing. Again, that notification will outline the reasons behind the delay. DuPont, as Plan Administrator, has final authority and discretion to interpret the Plan, resolve any ambiguities and determine eligibility for benefits, and its decisions are final and binding.

## FUTURE OF THE PLAN

While DuPont intends to continue the benefits and policies described in this booklet, the Company reserves the right to change, modify, or discontinue this plan at its discretion.

**A82**

D000157

MAY 0 7 1998

PENSION

AND

RETIREMENT

PLAN

Originally Adopted - September 1, 1904

Last Amended - March 1, 1998

E. I. du Pont de Nemours and Company

**A83**

D000160

PENSION AND RETIREMENT PLAN

I.  PURPOSE

The purpose of this Plan is to provide for the retirement of employees and, under the conditions set forth below, to provide an employee who is retired or otherwise terminated with pension rights that take into account the length of his service and the pay he received during his employment with the Company.

II.  ADMINISTRATION

The administration of this Plan is vested in the Board of Benefits and Pensions appointed by the Company. The Board may adopt such rules, or delegate to one or more persons its authority to make initial determinations, as it may deem necessary for the proper administration of the Plan.  The Board of Benefits and Pensions retains discretionary authority to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan.  The decision of the Board in all matters involving the interpretation and application of the Plan shall be final. The Company shall have authority to control and manage the Plan and the Board of Directors shall have authority to control and manage the assets of the Pension Trust Fund as set forth in paragraph J of Section IX.

III.  NORMAL RETIREMENT AGE

The normal retirement age under this Plan is the later of age 65 or, for employees who commence participation in the Plan after age 60, the 5th anniversary of the time Plan participation commenced.  The Company reserves the right to require an employee to accept retirement at or after age 65 where permitted by law.

IV.  PENSIONS FOR RETIRED EMPLOYEES

An employee who is eligible for retirement may retire at any time.  An employee who retires on or after January 1, 1985 and who meets the respective eligibility requirements specified in paragraphs A through D of this Section will be entitled to a monthly pension payment beginning with the month following that in which he retires and ending with the month in which he dies.  An employee who retires at other than month end will receive a pro rata pension payment for the partial month.  The pro rata amount will be included with the first monthly pension payment covering the month following that in which he retires.

**A84**

D000163

A.  Normal Retirement

    (1)  Eligibility

        An employee will be eligible for Normal Retirement after reaching age 65 with at least 15 years of service.

    (2)  Amount of Pension

        The amount of monthly pension payable to an employee eligible for retirement under this paragraph will be the greatest of

        (a)  1.2% of Average Monthly Pay multiplied by Service;

        (b)  1.5% of Average Monthly Pay multiplied by Service, minus 50% of Primary Social Security Benefit;

or

        (c)  $9 multiplied by Service, plus 10% of Average Monthly Pay:

        provided that the amount determined under (a) or (b) above may not be greater than an amount which, when added to the employee's full Primary Social Security Benefit, will equal 100% of the employee's Average Monthly Pay; provided further that the amount determined under (a), (b), or (c) above shall be reduced to reflect any pre-retirement spouse benefit coverage as provided under paragraph C of Section V and paragraph C of Section VI.

        Average Monthly Pay, Service, and Primary Social Security Benefit are defined in paragraphs A(2) through (4) of Section IX.

B.  Early Retirement

    (1)  Eligibility

        An employee will be eligible for Early Retirement after reaching age 50 and prior to reaching age 65 with at least 15 years of service.

**A85**

D000164

(2)   Amount of Pension

The amount of monthly pension payable to an employee eligible for retirement under this paragraph will be determined in the same manner as a Normal Retirement pension (paragraph A(2) of this Section) except that the result will be multiplied by the applicable percentage factor from the Early Retirement table.

## PERCENTAGE FACTORS FOR EARLY RETIREMENT PENSION

| AGE AT COMMEN-CEMENT OF PAYMENT | 15 THROUGH 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 AND OVER |
|---|---|---|---|---|---|---|---|---|
| | | | SERVICE YEARS | | | | | |
| 65 | 100% | | | UNREDUCED PENSION | | | | |
| 64 | 95 | 100% | | | | | | |
| 63 | 90 | 95 | 100% | | | | | |
| 62 | 85 | 90 | 95 | 100% | | | | |
| 61 | 80 | 85 | 90 | 95 | 100% | | | |
| 60 | 75 | 80 | 85 | 90 | 95 | 100% | | |
| 59 | 70 | 75 | 80 | 85 | 90 | 95 | 100% | |
| 58 | 65 | 70 | 75 | 80 | 85 | 90 | 95 | 100% |
| 57 | 60 | 65 | 70 | 75 | 80 | 85 | 90 | 95 |
| 56 | 55 | 60 | 65 | 70 | 75 | 80 | 85 | 90 |
| 55 | 50 | 55 | 60 | 65 | 70 | 75 | 80 | 85 |
| 54 | 50 | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 53 | 50 | 50 | 50 | 55 | 60 | 65 | 70 | 75 |
| 52 | 50 | 50 | 50 | 50 | 55 | 60 | 65 | 70 |
| 51 | 50 | 50 | 50 | 50 | 50 | 55 | 60 | 65 |
| 50 | 50 | 50 | 50 | 50 | 50 | 50 | 55 | 60 |

For intermediate age and service combinations, the percentage factor will be interpolated from the above.

(3)   Amount of Pension in Certain Circumstances

For an employee who terminates on or after October 15, 1994, under the circumstances specified in Section IV.D.(1)(c)(i), (ii), or (iii), the amount of Normal Retirement pension will be not less than the employee's benefit accrued on October 15, 1994, reduced under the provisions of Section IV.D.(2) at the employee's age and service at the point of termination.

**A86**

D000165

C.    Incapability Retirement

    (1)    Eligibility

        An employee may be retired by the Company if the Board of Benefits and Pensions finds that he has become, for any reason, permanently incapable of performing the duties of his position with the degree of efficiency required by the Company, and he has at least 15 years of service.

    (2)    Amount of Pension

        The amount of monthly pension payable to an employee eligible for retirement under this paragraph will be determined in the same manner as a Normal Retirement pension (paragraph A(2) of this Section).

    (3)    Incapability Supplement

        Such employee will also receive a supplement equal to the greater of (a) 50% of Primary Social Security Benefit as defined in Section IX, or (b) $90 a month, such amount to be paid until the earliest date on which he becomes eligible for an old-age benefit or unless he is receiving a disability benefit under the Federal Social Security Act.

D.    Optional Retirement

    (1)    Eligibility

        (a)    An employee will be eligible for Optional Retirement after reaching age 50 with at least 15 years of service if his employment would otherwise be involuntarily terminated for reasons other than discharge for dishonesty, insubordination or other misconduct.

        (b)    An employee will be eligible for Optional Retirement after reaching age 45 and prior to reaching age 50 with at least 25 years of service if his employment would otherwise be involuntarily terminated due to lack of work.  The length of service required for eligibility shall be reduced by two months, or a proportionate part thereof,

# A87

D000166

for each month or portion thereof which has elapsed since the employee reached age 45.

c)   Effective October 15, 1994, an employee will not be eligible for Optional Retirement under the following circumstances but will be eligible for the right described in Section V.A.(2):

(i)   the employee is offered and accepts employment with the buyer or joint venture at the site in conjunction with a sales agreement between the Company and a buyer of Company assets or in conjunction with the formation of a joint venture; or

(ii)   the employee is offered and refuses employment with the buyer or joint venture at the site in conjunction with a sales agreement between the Company and a buyer of Company assets or in conjunction with the formation of a joint venture unless the offer is less than 80% of the employee's Company wage or salary level or the rejection results in a job for another employee who would otherwise have been terminated for lack of work.

(iii)   the employee is transferred to or employed by a wholly-owned subsidiary of the Company, or is transferred to or employed by a subsidiary of the Company or a joint venture in which the Company participates that recognized Company service.

d)   Effective April 15, 1997, an employee will not be eligible for Optional Retirement under the following circumstances but will be eligible for the right described in Section V.A.(2):

(i)   the employee is offered and accepts similar employment at

**A88**

8

D000167

the site with a service provider which is providing or will provide services to the Company pursuant to a service agreement with the Company; or

(ii) the employee is offered and refuses similar employment at the site with a service provider which is providing or will provide services to the Company pursuant to a service agreement with the Company, unless the offer is less than 80% of the employee's Company wage or salary level or the rejection results in a job for another employee who would otherwise have been terminated for lack of work.

(2)     Amount of Pension

The amount of monthly pension payable to an employee eligible for retirement under this paragraph will be determined in the same manner as a Normal Retirement pension (paragraph A(2) of this Section) except that the result will be reduced by five-twelfths of 1% for each month by which the month of his retirement precedes the earliest month in which, with continued employment, he would have become eligible for an unreduced pension under the Normal or Early Retirement provisions (paragraph A or B) of this Section.

E.     Income-Leveling Option

An employee who retires prior to age 62 under the Early or Optional Retirement provisions (paragraph B or D) of this Section may elect to have his pension increased prior to age 62 and reduced thereafter, using the investment return rate determined in accordance with Appendix A and the factors in Appendix B, to provide, as far as practicable, a level retirement income before and after Federal Social Security payments begin.  In the application of this option, the amount of pension payable after age 62 may not be reduced below $25 per month. This election shall be made in such manner as the Board of Benefits and Pensions may prescribe and may not be changed after the employee's retirement.

**A89**

D000168

F.    Application for Pension

An employee who retires or is about to retire may make application for a pension to the Board of Benefits and Pensions in such manner as the Board may prescribe.  Such application may also be submitted on an employee's behalf by the head of his department or by any official of the Company to whom the employee reports.

G.    Transfers to Affiliates

Notwithstanding the foregoing, an employee who has been transferred to an affiliated group company will not be eligible to retire under this Section; provided, however, that an employee who had 15 years of service at the time of such transfer may, should he become incapable within the meaning of Section IV.C of this Plan but not be eligible for incapability or equivalent retirement benefits under the defined benefit pension plan of such Company, be retired under this Plan as though he were an employee of this Company and will be entitled to benefits as prescribed in Section IV.C, including any incapability supplement.

H.    Consent to Distribution

An employee (and when applicable, the employee's spouse) shall consent to any plan distribution (where the present value of the nonforfeitable accrued benefit is in excess of $3,500) which would occur prior to the later of age 62 or normal retirement age.

V.    VESTED RIGHT TO DEFERRED PENSION

A. Eligibility

(1)    An employee shall acquire a nonforfeitable right to a deferred pension if his employment within the affiliated group is terminated on or after July 1, 1988 for any reason other than retirement under the provisions of Section IV and (1) he has had at least 5 years of service or (2) he has reached the normal retirement age as set forth in Section III. Such a terminated employee may elect to receive a monthly payment in accordance with the age and service categories as shown in the

**A90**

10

D000169

following table, subject to the provisions of paragraph V.C.

| Years of Service At Termination | Age When Payment May Begin |  |
|---|---|---|
|  | Reduced | Unreduced |
| Less than 10 | Not Available | 65 and over |
| 10 through 14 | 60 through 64 | 65 and over |
| 15 through 29 | 50 through 64 | 65 and over |
| 30 or more | 50 through 59 | 60 and over |

Payments may begin with the month following that in which the employee becomes eligible, or any month thereafter, and will end with the month in which he dies.

(2)    An employee who met the age and service requirements of Section IV.D.(1)(b) at his work termination prior to age 50 for lack of work but who is not eligible for Optional Retirement pursuant to the requirements of Section IV.D.(1)(c) or (d) will be eligible to receive a monthly payment determined in accordance with Section B.(3) below, beginning with the month following the month in which he terminates and ending with the month in which he dies.

B.    Amount of Deferred Pension

(1)    The amount of unreduced monthly deferred pension payable in accordance with paragraph A(1) of this Section will be determined in the same manner as a Normal Retirement pension (paragraph A(2) of Section IV) except that, in applying paragraph A(2)(c) of Section IV, 2/3% of Average Monthly Pay times Service shall be substituted for 10% of Average Monthly Pay where Service is less than 15 years.  The amount of pension payable to an employee transferred to an affiliated group company will be based on his Service and Average Monthly Pay at the time of transfer.  An employee who elects to receive reduced payments will have his payments reduced by five-twelfths of 1%

**A91**

11

D000170

for each month by which the first month of such payments precedes the month in which he would have been entitled to receive an unreduced deferred pension payment.

(2)   Any reduction in monthly deferred pension will be determined after application is made - after any reduction to reflect spouse benefit coverage under paragraph C of this Section or paragraph C of Section VI prior to commencement of monthly pension payments - and a reduced pension will be paid to the former employee until he dies.

(3)   The amount of monthly pension payable in accordance with Section V.A.(2) will be the greater of:

(i)    either the employee's benefit accrued on October 15, 1994, for those employees who terminate on or after October 15, 1994, under the circumstances specified in Section IV.D.(1)(c) or the employee's benefit accrued on April 15, 1997, for those employees who terminate on or after April 15, 1997, under the circumstances specified in Section IV.D.(1)(d), whichever is applicable, reduced under the provisions of Section IV.D.(2) at the employee's age and service at the point of termination; or

(ii)   the employee's vested deferred benefit payable beginning immediately; provided that, if the employee is under age 50, the amount of the employee's monthly benefits otherwise payable at age 50 determined under Section V.B.(1) will be further reduced 1/2% for each month by which the first month of payments precedes the month after the month of the employee's 50th birthday.

# A92

D000171

C.    Spouse Benefit Coverage

    (1)    An employee who would be entitled to monthly pension payments under paragraph A of this Section if his employment were terminated will have benefit coverage for his spouse prior to the commencement of monthly pension payments.  A former employee who is entitled to monthly pension payments under paragraph A of this Section will have benefit coverage for his spouse prior to the commencement of monthly pension payments unless (i) the former employee provides satisfactory evidence that his spouse cannot be located; (ii) he is legally separated or abandoned, pursuant to a court order to that effect; (iii) spousal consent is otherwise not required by regulations issued by the Secretary of the Treasury, or the former employee and spouse specify otherwise in writing in the manner prescribed by the Board of Benefits and Pensions.  A former employee may revoke or reelect his coverage at any time beginning with termination of employment and prior to the former employee's death.

    (2)    In the event of a covered employee or former employee's death, payments to the spouse will be made as provided below:

      (a)    If the employee had attained earliest benefit commencement age, monthly payments will be made to the spouse equal to 50% of the employee's pension calculated under paragraph B of this Section as though he had terminated employment immediately prior to death and elected to have monthly payments commence, and reduced as provided in subparagraph (4) below.  Payments to the spouse will begin with the month following that in which the employee dies and end with the month in which the spouse dies.

      (b)    If the employee had not attained earliest benefit commencement age, monthly payments will be made to the spouse equal to 50% of the

**A93**

13

D000172

employee's pension calculated under paragraph B as though the employee had terminated employment immediately prior to death and applied for monthly pension payments to commence at earliest benefit commencement age, and reduced as provided in subparagraphs (4) below. Payments to the spouse will begin with the month following that in which the employee would have attained earliest benefit commencement age and end with the month in which the spouse dies.

(c)    If the former employee had attained earliest benefit commencement age, monthly payments will be made to the spouse equal to 50% of the former employee's pension calculated under paragraph B of this Section as though he had applied for benefits immediately prior to death and reduced as provided in subparagraphs (3) and (4) below.  Payments to the spouse will begin with the month following that in which the former employee dies and end with the month in which the spouse dies.

(d)    If the former employee had not attained earliest benefit commencement age, monthly payments will be made to the spouse equal to 50% of the former employee's pension calculated under paragraph B of this Section as though he had applied for benefits at earliest benefit commencement age and reduced as provided in subparagraphs (3) and (4) below.  Payments to the spouse will begin with the month following that in which the employee would have attained earliest benefit commencement age and end with the month in which the spouse dies.

(e)    For purposes of Section V.C(2) "earliest benefit commencement age" shall mean the earliest age, given the employee or former employee's service, that benefits could

**A94**

14

D000173

commence under the table in Section V.A.

(f)    Notwithstanding the foregoing paragraphs, the spouse must consent to any plan distribution, where the accrued benefit is in excess of $3,500, which would occur prior to the time the employee would have attained the latter of age 62 or normal retirement age.

(3)    To provide the monthly 50% payment coverage to the spouse hereunder, a former employee's monthly pension payments will be reduced for coverage after April 1, 1985 as provided below:

COVERAGE DURING EMPLOYMENT

| Age at Time of Coverage | Charge Per Month of Coverage |
|---|---|
| less than 35 | .0002% |
| 35-44 | .0006% |
| 45-54 | .0060% |
| 55-64 | .0400% |
| 65 and over | .1250% |

COVERAGE AFTER TERMINATION OF EMPLOYMENT BUT BEFORE COMMENCEMENT OF PENSION PAYMENTS

| Age at Time of Coverage | Charge Per Month of Coverage |
|---|---|
| less than 35 | .004% |
| 35-44 | .007% |
| 45-54 | .025% |
| 55-64 | .055% |
| 65 and over | .125% |

The charge for employment coverage during 1989 for those former employees who did not attain age 35 before January 1, 1989 will not be applied.

For employees terminating employment on or after January 1, 1996, the charge for coverage after termination of employment but before commencement of pension payments will not be applied until the earlier of commencement of pension payments or six months following the termination of employment.

**A95**

15

D000174

For employees terminating employment on or after April 1, 1985, who have not commenced payment before March 1, 1998, the charge for coverage after termination of employment but before commencement of pension payments will not be applied. The charge will be applied to the pension payments of former employees who have commenced payment or who are deceased before March 1, 1998.

(4)  Unless the employee or former employee and his spouse specify otherwise in writing in the manner prescribed by the Board of Benefits and Pensions at the time he makes his application hereunder, or (i) the employee provides satisfactory evidence that his spouse cannot be located; (ii) he is legally separated or abandoned, pursuant to a court order to that effect; (iii) spousal consent is otherwise not required by regulations issued by the Secretary of the Treasury at the time he makes his application hereunder, his deferred pension as calculated under paragraph B will be reduced using the investment return rate determined in accordance with Appendix A and the factors in Appendix C. Payments will be made to the spouse named at application and will begin with the month following that in which the former employee dies and end with the month in which the spouse dies.

(5)  For purposes of this subsection, the term "employee" does not include an active employee with at least 15 years of service or a former employee who had at least 15 years of service upon transfer to an affiliated group company and who (i) is still employed within the affiliated group or (ii) retired from the affiliated group under a provision similar to Section IV.

D.  Deferred Pensions of Employees Terminated Prior to January 1, 1985

The deferred pension benefits payable to a former employee whose employment terminated prior to January 1, 1985 will remain as determined in accordance with the provisions of the Plan in effect on the date of his termination subject to the following conditions.

(1)  A former employee who terminated employment after September 2, 1974 and before January 1, 1976 and has not yet started to receive payments under this Section may elect to have his deferred pension reduced to provide the spouse benefit coverage

**A96**

D000175

described in Section V.C(4) in such manner as prescribed by the Board of Benefits and Pensions.

(2) A former employee who terminated employment on or after January 1, 1976 and before August 23, 1984 and who has not yet started to receive payments may elect the spouse benefit described in Section V.C in such manner as prescribed by the Board of Benefits and Pensions.

(3) A former employee whose employment terminated on or after August 23, 1984 but before January 1, 1985 and who first applies for benefit payments after January 1, 1985 or who dies prior to the commencement of benefits will have his payments (or calculated benefit) reduced to provide a spouse payment as provided in Section V.C.

E.  Application for Deferred Pension

A former employee who has terminated and who becomes entitled to receive monthly pension payments will receive such payments if he makes application in such manner as the Board of Benefits and Pensions may prescribe within three months of the time he wishes payments to begin. No payment will be made for any period before the employee reaches normal retirement age or terminates his employment, whichever is later, which elapses before the application is filed.

VI.  PAYMENTS TO SURVIVORS

A.  Company-Paid Survivor Benefits

(1)  Eligibility

Except as provided in paragraph D of this Section, following the death on or after January 1, 1985 of (a) an active employee with 15 or more years of service, (b) a former employee who retired with pension under Section IV on or after January 1, 1985 or (c) a former employee who had 15 years of service upon transfer to an affiliated group company and (i) was employed within the affiliated group at his death, (ii) was at least 50 years of age when he retired from the affiliated group under a provision similar to paragraph A or B of Section IV, or (iii) retired from the affiliated group under a provision similar to paragraph C of Section IV, monthly payments will be made to: the surviving spouse of an active employee; the spouse at retirement of a former employee; or a survivor or

**A97**

17

(d)  The term "gain sharing program" means a pay program that provides additional pay only if business objectives are exceeded.

(e)  The term "variable pay" means the variable payment under a pay program that relates a portion of total pay to business objectives such that if objectives are met, targeted pay levels are reached, but if objectives are exceeded or are not met, pay is above or below targeted levels.  The variable pay will be divided evenly over the period of an employee's service to which the payment is attributable.

(3)  (a)  The term "Service" means the length, in years and fractions of a year, of an employee's period of "continuous service" for computing the amount of a pension as determined under the provisions of the Company's Continuity of Service Rules; provided that in the case of an employee described in Section IX.A(1)(b), the term "Service" shall not include any period after June 30, 1987.

For employees retiring before March 18, 1987, service after the end of the month in which the employee reaches age 70 will not be counted for computing the amount of pension.

The following conditions shall also apply for purposes of determining eligibility for benefits under Section V of this Plan.

(i)  An employee compensated with respect to 1,000 or more hours during a computation period will be credited with one year of service.  Once having established such a year of service, such employee will be credited with an additional year of service for each computation period during which he is compensated with respect to 1,000 or more hours.

(ii)  An employee will not incur a break in service if he is compensated with respect to more than 500 hours during a computation period.

(iii)  An employee will be credited with up to 501 hours to avoid a break in

**A98**

30

D000189

service if the employee provides evidence satisfactory to the Board of Benefits and Pensions or its delegate that the absence (i) commenced on or after January 1, 1985 and (ii) was due to the employee's pregnancy, the birth of the employee's child, or the legal adoption of a child by the employee. Service to avoid such a break will be credited in either the computation period in which the absence commenced or the next succeeding computation period, whichever is necessary to prevent the first break in service.

(b)    An employee whose service is not credited under the Continuity of Service Rules, pursuant to Section II.1(c) of such Rules, will be credited with service only for purposes of determining eligibility for benefits under Section V of this Plan as follows:

(i)    Such an employee compensated with respect to 1,000 or more hours during a computation period will be credited with one year of service. Once having established such a year of service, an employee will be credited with an additional year of service for each computation period during which he is compensated with respect to 1,000 or more hours.

(ii)    Such an employee will not receive service credit if he is compensated for less than 1,000 hours during a computation period.

(iii)    Such an employee will incur a break in service if he is compensated with respect to 500 or less hours in a computation period. For employees reemployed after March 1, 1997, or awaiting a service cure on March 1, 1997, following a break in service, prior service will be taken into account immediately upon reemployment.

**A99**

D000190

    (iv)      An employee will be credited with up to 501 hours to avoid a break in service if the employee provides evidence satisfactory to the Board of Benefits and Pensions or its delegate that the absence (i) commenced on or after January 1, 1985 and (ii) was due to the employee's pregnancy, the birth of the employee's child, or the legal adoption of a child by the employee. Service to avoid such a break will be credited in either the computation period in which the absence commenced or the next succeeding computation period, whichever is necessary to prevent the first break in service.

    (v)      Such an employee will not incur a break in service if he is compensated with respect to more than 500 hours during a computation period.

The amount of benefit attributable to any years of service so determined under (b)(i) above, will be calculated as though that service had been credited under paragraph A(3)(a) of this Section.

(c)    For purposes of paragraph A(3) of this Section, a computation period shall be a period of 12 consecutive months commencing the later of January 1, 1976, or the employee's first day of employment or reemployment, whichever is applicable, or any succeeding anniversary of such date.

Effective March 1, 1998, an initial computation period shall be a period of 12 consecutive months commencing on the employee's first date of employment. All succeeding computation periods shall be determined on the basis of time worked in a calendar-year basis, beginning January 1 and ending on December 31.

(d)    For purposes of paragraph A(3) of this Section, the term "hour" means each hour for which an employee is compensated or entitled to compensation for the performance of duties and includes each such hour for which back

# A100

32

pay, irrespective of mitigation of damages, has been awarded or agreed to by the Company. The term "hour" also includes each hour for which an employee is compensated or entitled to compensation due to vacation, holiday, illness, incapacity (including disability), jury duty, military duty or leave of absence. No more than 501 hours shall be credited hereunder to any employee on account of any single continuous period during which no duties are performed unless such period of compensation is taken into account in determining an employee's length of continuous service under the Continuity of Service Rules. Hours shall be  credited to the period during which the duties are performed or to which the payment relates and, in the case of a period where no duties are performed, shall be credited on the basis of the number of regularly scheduled working hours during the period. To the extent not provided above, the rules set forth in Department of Labor Regulations 2530.200b-2(b) and (c), which are hereby incorporated by reference, shall be followed.

(e)   For purposes of determining eligibility for benefits under Section V of this Plan, an employee's service with any member of the controlled group shall be recognized with respect to the period of affiliation.

(f)   Each employee shall become a participant in the Plan on his first day of employment or reemployment, except that an employee whose service is not credited under the Continuity of Service Rules shall not be eligible to participate in the Plan prior to January 1, 1976.

(4)   The term "Primary Social Security Benefit" means the monthly primary old-age benefit to which the employee would be immediately entitled (if age 62 or over) or to which he would be entitled at age 62 (if younger than 62), in accordance with the Federal Social Security Act in effect on January 1 of the year of his retirement or termination and based on his actual earnings on which the Company (or any other company, to the extent that service therewith is recognized in computing a benefit under this Plan) has paid taxes under the Federal Insurance Contributions Act.  In determining the Primary Social Security Benefit for purposes of

**A101**

33

D000192

this Plan, the employee shall be treated as fully insured under the Federal Social Security Act. For years for which the Company has no record of his actual earnings, an estimate will be calculated by projecting backwards from the last known year using rates equal to the actual changes in national average earnings, as determined by the Social Security Administration. However, the employee may elect to have his Primary Social Security Benefit calculated using his actual earnings, provided he supplies documentation of such earnings from the Social Security Administration within 30 days following the later of the date of his separation from service and the date he is notified by the Company of his entitlement to a benefit.

(5)   The terms "actuarially reduced" and "actuarially increased" mean such reduction or increase in the monthly payment to the retired employee or his survivor under this Plan as shall be determined by the Board of Benefits and Pensions, with the advice of an actuary, taking into account the age of the employee or of the survivor entitled to receive payments, or both, as appropriate. The actuarial reduction or actuarial increase will be calculated using:

    (a)   the investment return rate determined in accordance with Appendix A, and

    (b)   mortality rates for pensioners and for survivors using, respectively, the 1985 Du Pont Pensioner Mortality Table and the 1985 Du Pont Survivor Mortality Table.

(6)   The term "Company" means E. I. du Pont de Nemours and Company and/or any wholly owned subsidiary or part thereof which adopts this Plan with the approval of the Office of the Chief Executive, or such person or persons as the Office of the Chief Executive may designate.

(7)   The term "Plan Year" means calendar year.

(8)   The term "controlled group" means E. I. du Pont de Nemours and Company and its controlled group of corporations within the meaning of Section 1563(a) of the Code.

(9)   The term "affiliated group" means E. I. du Pont de Nemours and Company and its controlled group of corporations within the meaning of Section 1563(a) of the Code, but does not include any foreign

# A102

D000193

subsidiary or any domestic subsidiary which derives in excess of 50% of its gross income for a taxable year from sources without the United States (as defined in Section 7701(a)(9) of the Code).

(10) The term "Code" means the Internal Revenue Code of 1986, as amended.

B.  Accrued Benefit

An employee's accrued benefit under the Plan at any point in time shall be the amount of monthly benefit determined pursuant to paragraph A(2) of Section IV, based on his Average Monthly Pay, Service, and Primary Social Security Benefit at that time and taking into account any reductions that might be applicable in the case of payment before normal retirement age.  Where Service is less than 15 years, 2/3% of Average Monthly Pay times Service shall be substituted for 10% of Average Monthly Pay in paragraph A(2)(c) of Section IV.

C.  Payments Rounded to Next Higher Full Dollar

Each monthly pension, deferred pension and survivor benefit payment, and each supplemental monthly payment made in connection with Incapability Retirement, which is computed in accordance with this Plan will, if not in whole dollars, be increased to the next higher whole dollar.  Such rounding shall be made after applying any applicable reduction factors.

D.  Benefit Limitations

(1)  In no case will an annual benefit payable under this Plan with respect to any employee, when added to benefits payable to such employee from all other Defined Benefit Plans of the controlled group, exceed the maximum amount permissible, as described in Appendix F.

(2)  In the event the Plan becomes top-heavy within the meaning of the Code, provisions of Appendix G will apply, notwithstanding any other Plan provisions to the contrary.

E.  Pension Plans of Other Companies

(1)  Acquisitions

The Company, or such person or persons as the Company may designate, may grant pension, deferred pension or survivor benefit rights under this Plan in recognition of those which had been accrued

**A103**

D000194

under the pension or retirement plan of another company provided

(a)   such company shall have been acquired, or its assets acquired, in whole or in part, by this Company; and

(b)   the employee with respect to whom such pension or other benefit is payable shall have become entitled thereto by retirement or other termination prior to such acquisition, or shall have become an employee of this Company or an affiliate of this Company coincident with or as a result of such acquisition; and

(c)   the Company, or such person or persons as the Company may designate, shall have designated such plan to be a Covered Plan for purposes of this paragraph.

The Company, or such person or persons as the Company may designate, may prescribe reasonable rules under this paragraph for each acquisition, such rules to be uniformly applicable to all employees and former employees affected thereby.

(2)   Merger or Consolidation of Plan or Transfer of Assets

(a)   The Company may in its discretion, direct the trustee of the Pension Trust Fund to accept the transfer of assets from the trustee of another qualified defined benefit pension plan, provided the requirements of Section 414(1) of the Code will be satisfied in such transfer. An employee's benefit entitlement will not be diminished as the result of any merger or consolidation with, or transfer of assets or liabilities to, or from, any other plan.

(b)   With respect to an employee who was a participant in the New England Nuclear Corporation Pension Plan and Trust on December 31, 1983, if the employee's accrued benefit under that plan on such date, actuarially increased to the life annuity equivalent, exceeds the amount calculated under Section IV.A(2) of this Plan, such actuarially increased accrued benefit equivalent shall be used in place of the amount calculated under Section IV.A(2) in

**A104**

D000195

CONTINUITY

OF

SERVICE

RULES

Originally Adopted – June 2, 1919

Last Amended – March 1, 1997

E. I. du Pont de Nemours and Company

**A105**

CONTINUITY OF SERVICE RULES

The following Rules have been adopted by E. I. du Pont de Nemours & Company to govern the determination of the length of an employee's continuous service under the Du Pont Company's various Industrial Relations Plans:

I.       DEFINITIONS

   1.  For the purpose of these Rules:

      (a) The term "the Du Pont Company" means E. I. du Pont de Nemours & Company and its predecessor, E. I. du Pont de Nemours Powder Company.

      (b) A subsidiary of a company means a corporation in which such company owns more than 50% of the voting stock.

      (c) An affiliate means any corporation in which the Du Pont Company owns, directly or indirectly, any part of the voting stock.

      (d) The term "Full Service Employee" means any person designated by the Company as a full-time employee. Any Full Service Employee on the roll 12/1/85 who continues to work at least 20 hours per week on a regular basis will be considered a Full Service Employee.

      (e) The term "Limited Service Employee" means any person designated by the Company as a temporary or part-time employee and who is employed either (1) on a temporary basis for less than one year or (2) on a part-time basis for no more than 1600 hours in any 12-consecutive month period.

      (f) A break in service means separation from the service for any reason which results in the removal of an employee's name from the salary or wage roll and shall be concurrent with such removal, except as otherwise hereinafter provided.

**A106**

II.     SERVICE

 1.  For the purpose of these Rules:

  (a) Service includes service with the Du Pont Company and with any company the property and business of which were acquired by the Du Pont Company prior to January 1, 1920.

  (b) Service includes service to the extent specified by the Du Pont Company's Board of Benefits and Pensions or its delegate with any of the following companies:

   (1)  Companies the property and business of which were acquired, in whole or in part, by the Du Pont Company subsequent to January 1, 1920;

   (2)  Subsidiaries of companies the property and business of which have been acquired by the Du Pont Company;

   (3)  Companies affiliated with the Du Pont Company; and

   (4)  Companies with which the Du Pont Company is joined in a partnership or joint venture.

   (5)  Partnerships or joint ventures in which the Du Pont Company has an ownership interest.

  (c) Service is not credited to any individual who is employed as a Limited Service Employee.

 2.  Time covered by payments in lieu of notice of termination of employment or by other payments at time of termination shall not count in the calculation of service for which employees may receive credit.

 3.  Time covered by payment pursuant to Section XI A. (1) (b) of the Pension and Retirement Plan shall not be taken into account in calculating the service for which employees may receive credit under the Pension and Retirement Plan for purposes of benefit accrual or for purposes of eligibility.

III. LENGTH OF CONTINUOUS SERVICE

 The length of an employee's continuous service as of any date is the period of time which has elapsed since the employee's

**A107**

original date of employment, or the date of his reemployment
following the last break in his service, whichever is the later
date, except as otherwise provided herein.

IV.        ABSENCES WHICH DO NOT CONSTITUTE BREAKS IN SERVICE

    1.  The following absences or separations will not
        constitute breaks in service, and full service
        credit, equivalent to that resulting from actual
        service, will be given for the time covered by such
        absences or separations:

        (a) Absences with permission for a period of not
            more than sixteen consecutive calendar days for
            which no formal leave of absence is required;

        (b) Absences on vacation with pay;

        (c) Time covered under the Short-Term Disability
            Plan or by formal leave of absence on account of
            occupational or non-occupational disability, or
            for time carried on the Personal Injury Roll.

        (d) Time spent in military, Merchant Marine, or
            specialized Government service as defined by the
            Du Pont Company during World War II and
            thereafter if entered upon prior to April 1,
            1947, and if reemployed under conditions
            provided by law, or by Du Pont Company action if
            more liberal; or

        (e) Time spent in active military training and
            service, as defined by the Du Pont Company
            during the period between April 1, 1947, and
            January 31, 1955 (the end of the Korean
            emergency), and thereafter, if entered upon
            during that period, provided that such service
            did not exceed a total of fifty-one months plus
            any period of additional service imposed
            pursuant to law and if reemployed under
            conditions provided by law or by Du Pont Company
            action if more liberal; or

        (f) Time not to exceed a total of fifty-one months
            (unless an extension is required under
            provisions of the applicable Military Selective
            Service Act) spent in active military training
            and service if entered upon after January 31,
            1955, or time on active duty for training in the
            Reserve Forces if entered upon on or after
            January 1, 1956, as such terms shall be defined

**A108**

by the Du Pont Company and if reemployed or returned to active employment pursuant to law or Du Pont Company action if more liberal; or

(g) Time spent in the course of temporary duties outside the Company, which duties are undertaken at the request or with the approval of the Du Pont Company, provided that employees in such cases are granted leaves of absence authorized, approved, or ratified by the Board of Benefits and Pensions, or its delegate, specifically under this sub-paragraph.

(h) Time, not to exceed six months in any twelve month period during which the employee would otherwise be accruing service if he were not on a leave of absence, when an employee with a minimum of one year of continuous service voluntarily and with Management approval elects a leave of absence without pay to continue a job for another employee who would otherwise be terminated for lack of work at a location where the Company has announced an excess employment force.

2.  Except as provided in paragraph 1 of this Section, time covered by formal leave of absence on full or part pay will not constitute a break in service, and full service credit will be given for the time covered by such absences except in determining the number of years of service for computing the amount of a pension.

3.  Absences or separations under the following circumstances will not constitute breaks in service, but no service credit will be given for the time covered by such absences or separations:

(a) Except as provided in paragraph 1 of this Section, formal leave of absence without pay;

(b) Termination on account of lack of work in case a former employee of the Du Pont Company or an affiliated company that has been designated under Section II-1 (b) is reemployed by the Du Pont Company;

(c) Termination for any reason other than on account of lack of work in case a former employee of the Du Pont Company or an affiliated company that has been designated under Section II-1 (b) is reemployed by the Du Pont Company and if subsequent to reemployment following such

**A109**

- 4 -

termination the employee has acquired one year of continuous service; provided, however, that this one-year requirement will be waived for the purpose of the Pension and Retirement Plan if the employee retires or is involuntarily terminated for reasons other than discharge for dishonesty, insubordination or other misconduct, and if at the time of such retirement or termination the total of his prior periods of service and current service equals fifteen years or more; or

(d) Retirement with pension under Section IV of the Pension and Retirement Plan if the retired former employee is reemployed and his pension payments are suspended during reemployment.

(e) For employees reemployed after March 1, 1997, or awaiting a service cure on March 1, 1997, following a break in service, prior service will be taken into account immediately upon reemployment.

V.     BOARD OF BENEFITS AND PENSIONS

1.  The Board of Benefits and Pensions of the Du Pont Company, or its delegate, may cure breaks in continuity of service in any case where it shall determine that such action is within the spirit of these Rules and may grant such service credit with respect to the absence or separation as shall be deemed appropriate in the circumstances.

2.  Unusual cases which the Board of Benefits and Pensions finds not to have been provided for by these Rules shall be determined consistent with the spirit of these Rules and the equitable administration of the Company's Industrial Relations Plans.

3.  The Board of Benefits and Pensions retains discretionary authority to determine eligibility for service credit hereunder and to construe the terms and conditions of these Rules. The decision of the Board in all matters involving the interpretation and application of these Rules shall be final.

**A110**

VI.        MODIFICATIONS

These Rules may be modified from time to time by the Du Pont Company or by written instrument executed by such person or persons as the Du Pont Company may designate.

**A111**