# Exhibit A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22466196 (D.Del.), 31 Employee Benefits Cas. 2035
(Cite as: Not Reported in F.Supp.2d)

Page 1

H

United States District Court, D. Delaware.
Melvin PELL and Ellen Pell, Plaintiffs,
v.
E.I. DUPONT DE NEMOURS & COMPANY INCORPORATED, et al., Defendants.
No. Civ.A. 02-21 KAJ.

Oct. 29, 2003.

Robert Jacobs, Jacobs & Crumplar, P.A., Wilmington, DE, for Plaintiffs.
Kathleen Furey McDonough, Potter, Anderson & Corroon, LLP, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

JORDAN, J.

I. Introduction

*1 Presently before the Court is a Motion for Judgment on the Pleadings (Docket Item ["D.I."] 7; the "Motion") filed by defendants E.I. du Pont de Nemours & Co., Inc., a Delaware corporation, and the Board of Benefits and Pensions of E.I. du Pont de Nemours (collectively "DuPont").[FN1]

FN1. Subject matter jurisdiction is proper under 28 U.S.C. § 1331.

The Complaint filed by Plaintiffs Melvin Pell, a retired employee of DuPont, and Ellen Pell, Mr. Pell's wife, alleges that DuPont breached its duties, obligations and fiduciary responsibilities under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, by calculating Mr. Pell's benefits under the DuPont pension plan based on a later date than the commencement of his employment with Consolidated Coal Company ("Consol"), a DuPont subsidiary,[FN2] even though DuPont represented on several occasions over the course of his employment that it would use the earlier date in calculating his pension. (D.I. 1 at ¶¶ 10-14.) Plaintiffs seek to estop DuPont from using the later date in calculating the benefit rights due under the pension plan, as well as damages, interest, and costs. (D.I. 1 at ¶ 30.)

FN2. Consol is no longer a subsidiary of DuPont, but was at the time Mr. Pell became a DuPont employee. (D.I. 5 at ¶ 6.)

DuPont's Motion alleges that Plaintiffs are receiving the full amount due them under the DuPont pension plan and that the relief that Plaintiffs seek is unavailable as a matter of law. (D.I. 8 at 2.)

For the reasons set forth herein, DuPont's Motion is denied.

II. Standard of Review

A Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure requires the court to "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." *Turbe v. Gov't of the Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991). The motion can be granted "only if no relief could be granted under any set of facts that could be proved." *Id.* See also *Southmark Prime Plus, L.P. v. Falzone,* 776 F.Supp. 888, 891 (D.Del.1991) (citing *Turbe,* 938 F.2d at 428); *Cardio-Medical Associates, Ltd. v. Crozer-Chester Med. Ctr.,* 536 F.Supp. 1065, 1072 (E.D.Pa.1982) ("If a complaint contains even the most basic of allegations that, when read with great liberality, could justify plaintiff's claim for relief, motions for judgment on the pleadings should be denied.").

III. Background

Mr. Pell was employed by Consol on February 10, 1971. (D.I. 1 at ¶ 6; D.I. 13 at 3.) Mr. Pell provided engineering services to DuPont and worked at their facilities in Delaware while he was on "loan" to DuPont as a Consol employee between 1982 and January 1984. (D.I. 1 at ¶ 7.) Mr. Pell claims that, in 1983, he was asked to consider transferring employment from Consol to DuPont. (*Id.* at ¶ 8.) According to Mr. Pell, one of the key factors he considered in making his decision was whether his DuPont Pension and Retirement Plan (the "DuPont Plan") would be vested based on his total combined service at Consol and DuPont. (*Id.* at ¶¶ 9-11.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00423-KAJ    Document 43-2    Filed 05/22/2006    Page 3 of 6

Not Reported in F.Supp.2d                                                                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 22466196 (D.Del.), 31 Employee Benefits Cas. 2035
(Cite as: Not Reported in F.Supp.2d)

*2 Mr. Pell alleges that he transferred his employment to DuPont on January 1, 1984, after receiving assurances that his total combined service would be counted for vesting purposes. (*Id.*) [FN3] In explaining what effect his transfer of employment would have on his pension, Mr. Pell was told in a letter dated January 13, 1984, from the Director of Employee Compensation and Benefits at Consol, with a copy to the head of the DuPont Pension and Employment Relations Department, that the "[p]ension [he] receive[s] will be calculated under the DuPont Plan based on [his] total combined service." (D.I. 1 at Ex. A.) [FN4]

> FN3. In the Complaint, Plaintiffs claim that "[i]t was only when assured of this total vesting of years by [the letter from the Director of Employee Compensation and Benefits at Consol] that he agreed to transfer from Consol to DuPont." (D.I. 1 at ¶ 11). However, Mr. Pell transferred on January 1, 1984 and the letter was dated January 13, 1984. Plaintiffs clarify in their Opposition to Defendant's Motion that the representations Mr. Pell received regarding his pension were reduced to writing in the January 13, 1984 letter from DuPont Plan administrators or their agents. (D.I. 13 at 3.)

> FN4. The 1984 letter lists Mr. Pell's "Employment Date" as 02-10-71 and "Credited Service Date" as 08-01-72. The letter goes on to say, "The pension you will receive will be calculated under the DuPont Plan based on your total combined service." (D.I. 1 at Ex. A.)

Subsequent to the 1984 letter, Mr. Pell received a calculation of his pension benefits from DuPont on at least four occasions: 1991, 1992, 1998 and 1999. (D.I. 1 at ¶ 12.) All four calculations used February 10, 1971 to calculate his pension benefits under the DuPont Plan. (*Id.*) Mr. Pell alleges that in reliance upon representations that his pension was based on his total combined service starting February 10, 1971, he decided to retire in December 2000. (*Id.* at ¶ 13.) Eleven days prior to the date of his retirement, Mr. Pell was, he says, informed by DuPont that his pension was going to be calculated beginning on November 1, 1975 and therefore he would be given credit for 25.1667 years of service rather than the 29.9 he had expected and been assured of by DuPont. (*Id.* at ¶¶ 14-15.)

DuPont does not deny that it made numerous representations to Mr. Pell about basing his pension on February 10, 1971 as the date that his service began, but characterizes the representations as estimates that were "subject to final confirmation at the time a formal application for benefits was made." (D.I. 8 at 4.) DuPont points to the disclaimer language that appears on the representations, such as "data used in this estimate ... are subject to review and confirmation," to support its assertion. (*Id.*)

DuPont claims that its actuaries, in their final calculation of Mr. Pell's pension benefits, used November 1, 1975 rather than February 10, 1971 because guidelines that were in place at the time of Mr. Pell's transfer governed the treatment of pension benefits for employees who transferred between Consol and DuPont. (*Id.*; see also D.I. 5 at Ex. B) Those "Transfer Guidelines" state that:
pension benefits for any employee transferring from Consol to DuPont are to be calculated 'as though the individual's total recognized service has been with [DuPont] ... and the pension will be offset by the [Consol] pension accrued at the time of transfer and paid by [Consol] at time of retirement. Consol service for DuPont pension calculation purposes will be recognized only from 11/1/75 forward.'

(*Id.* at 7; D.I. 5, Ex. B at 6, 14.) Mr. Pell denies that he was ever given a copy of the Transfer Guidelines that were in effect at the time of his transfer to DuPont. (D.I. 13 at 5.)

Mr. Pell deferred retirement until May 31, 2001 while he appealed the service date used to calculate his pension benefits to the Board of Benefits and Pensions (the "Board"). (D.I. 1 at ¶ 19.) On May 24, 2001, the Board denied Plaintiffs' appeal. (D.I. 5 at Ex. A.) It explained that since Mr. Pell's service under the DuPont Plan and transfer policy "start[ed] on November 1, 1975, a service adjustment of 4.72500[wa]s applied to [Plaintiff's] February 10, 1971 ASD." (*Id.*)

*3 The reduction in credited service of approximately four-and-a-half years under the DuPont Plan resulted in a smaller benefit than Plaintiffs had anticipated. (D.I. 1 at ¶ 14.) According to Plaintiffs, the difference between the pension payments is approximately $725 per month, and if Plaintiffs live their normal life expectancies, the loss will exceed $100,000 in benefits. (Id. at ¶¶ 15, 24.) [FN5] DuPont has offered no compensation. The Board has simply told Mr. Pell that it:

Case 1:05-cv-00423-KAJ    Document 43-2    Filed 05/22/2006    Page 4 of 6

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2003 WL 22466196 (D.Del.), 31 Employee Benefits Cas. 2035
**(Cite as: Not Reported in F.Supp.2d)**

> FN5. It is unclear whether Plaintiffs are receiving benefits from August 1, 1972, the day Mr. Pell's credited service commenced under the Consol pension plan, to October 31, 1975. DuPont claims that even though Mr. Pell is not receiving pension benefits for this time period under the DuPont Plan, he is receiving pension benefits for this time period under the Consol plan. (*See* D.I. 8 at 8.) Plaintiffs do not seem to disagree that Mr. Pell is receiving pension benefits under the Consol plan from August 1, 1972 to October 31, 1975. They merely state that had Mr. Pell's "service been dated February 10, 1971 instead of the date alleged to be utilized by DuPont, August 1, 1972, he would have another 1.5538 years of service and a higher pension benefit." (D.I. 13 at 7-8.) Nonetheless, Plaintiffs argue that Mr. Pell's pension benefits under the DuPont Plan should be based on his total combined service at Consol and DuPont. (*Id.*) Nothing in this order is intended to indicate a factual determination on that question or the legal consequence of it.

sincerely regrets that [he] received several incorrect letters and statements over the years, and that [he was] informed of the correct treatment for [his] pension benefit only shortly prior to [his] intended retirement date. Unfortunately, due to the uniqueness of [his] situation (the timing and direction of [his] transfer), significant research was required to determine [his] proper treatment. That research began only upon receipt of [his] notice of intention to retire, and required significant time and resources from Consol, Conoco, and DuPont.
(D.I. 5 at Ex. D.)

Prior to bringing suit on January 9, 2002, Mr. Pell exhausted all of his appeals. (D.I. 1 at ¶¶ 19, 16.) Plaintiffs allege that DuPont breached its fiduciary duties under ERISA by misrepresenting the basis of the pension plan. Based on their reliance on the misrepresentations, Plaintiffs argue that DuPont should be estopped from changing the service date of February 10, 1971 as the basis of Mr. Pell's pension. (*Id.* at ¶ 28.) Plaintiffs also seek back pay for pension benefits, plus interest and future benefits calculated with the February 10, 1971 service date. (*Id.* at ¶ 30.)

IV. Discussion

Section 502(a)(3) of ERISA permits a beneficiary "to obtain ... appropriate equitable relief ... to redress [ERISA] violations or ... to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. 1132(a)(3). In *Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 (3d Cir.1991)*, the Third Circuit held that section 502 permits an ERISA beneficiary to recover benefits under an equitable estoppel theory.

Plaintiffs' argue that the representations made by DuPont assuring that the total combined service of Mr. Pell's employment with Consol and DuPont would be utilized in determining the basis of his pension benefits give rise to an equitable estoppel claim under ERISA. "To succeed under [an equitable estoppel] theory of relief, an ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *Curcio v. John Hancock Mutual Life Ins. Co., 33 F.3d 226, 235 (3d Cir.1994)*.

First, Plaintiffs must show that DuPont made material representations. The Third Circuit has held that a "misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." *Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir.1993)*. In this case, DuPont's multiple oral and written representations that Mr. Pell would receive pension benefits for his total combined service at Consol and DuPont is material. Plaintiffs allege that Mr. Pell decided to retire in December 2000 because Dupont had represented that his pension benefits would be based on February 10, 1971, the commencement of his employment with Consol. Thus, in the context of DuPont's Motion, the representations that DuPont made were "material representations." *Fischer, 994 F.2d at 135*.

*4 Second, Plaintiffs must demonstrate reasonable and detrimental reliance upon the representations that DuPont made. In *Smith v. Hartford Ins. Group, 6 F.3d 131 (3d Cir.1993)*, one of the plaintiffs suffered a cerebral hemorrhage and, as a result, required continuous care in a skilled nursing facility. *Id.* at 133. She was covered by her employer's group health insurance policy, but her employer changed its group health policy to a self-insured plan while she was still recovering from her injury. *Id.* Her husband, on her behalf, enrolled in the new plan based on the employer's erroneous oral and written representations that she would receive the same level of nursing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00423-KAJ    Document 43-2    Filed 05/22/2006    Page 5 of 6

Not Reported in F.Supp.2d                                                                  Page 4
Not Reported in F.Supp.2d, 2003 WL 22466196 (D.Del.), 31 Employee Benefits Cas. 2035
(Cite as: Not Reported in F.Supp.2d)

coverage. *Id.* at 133-134. After the plaintiffs were denied coverage under the insurance policy, they brought suit claiming that, were it not for the employer's misrepresentations, they could have converted to an individual policy in order to retain the skilled nursing care coverage provided by the former policy. *Id.* at 137. The Court held that a fact finder could find that the plaintiffs "reasonably and detrimentally relied on" the employer's continued misrepresentations. *Id.* at 140.

Like the plaintiffs in *Smith,* Plaintiffs here can credibly claim, at least at this pleading stage, that they detrimentally relied on DuPont's erroneous oral and written representations. Mr. Pell has alleged that he relied upon DuPont's oral and written representations in 1984, and written representations in 1991, 1992, 1998, and 1999 in choosing December 2000 as his retirement date. Mr. Pell's alleged reliance on these erroneous representations could be found to be detrimental. Plaintiffs assert that, as a result of DuPont's determination that November 1, 1975 was the correct date to calculate Mr. Pell's pension benefits, they are receiving $725 less per month than they are owed, which could amount to as much as $100,000 in benefits if Plaintiffs live their normal life expectancies.[FN6]

> FN6. Plaintiffs claim that, at the very least, they should be receiving benefits based on an additional 1.5538 years of service. (D.I. 13 at 7.)

Finally, Plaintiffs must demonstrate the existence of extraordinary circumstances. While that term is not specifically defined, a number of cases have helped to establish its parameters. In *Curcio,* the widow of the decedent brought an ERISA suit against the decedent's employer under ERISA to recover additional accidental death and dismemberment ("AD & D") benefits. 33 F.3d at 229. Before his death, decedent's employer held group meetings for its employees where, through an audio-visual presentation, it stated that it was going to provide supplemental AD & D coverage to its employees. *Id.* Although decedent purchased the maximum amount of coverage under his employer's insurance plan, the plan insurer argued that employees in decedent's position never had the opportunity to purchase supplemental AD & D coverage, and, even if they did, decedent only paid premiums for supplemental life insurance. *Id.* at 230. The court found it extraordinary that decedent's employers reassured the widow that she was covered for the additional AD & D benefits, that they initially argued to the insurer that additional AD & D benefits were included in the plan, and even encouraged her to file suit against the plan insurer, but later had a change of heart and argued that the supplemental AD & D insurance was never offered in the first place. *Id.* at 238.

*5 The Court in *Smith,* 6 F.3d 131, held that the fact finder could determine that extraordinary circumstances were established "in light of [employer's] repeated oral and written misrepresentations to [Mr.] Smith [and] his diligence in attempting to obtain accurate answers regarding is wife's coverage." *Id.* at 142.

Here, Mr. Pell apparently was diligent in attempting to obtain accurate information regarding his service date. Mr. Pell alleges that in 1984 he obtained written assurances that his total combined service would be counted for vesting purposes. That representation was made in a January 13, 1984 letter that was executed by the persons in charge of benefits at Consol and reviewed by the head of the DuPont Pension and Employment Relations Department. (D.I. 1 at ¶ 10.) On June 3, 1991, Mr. Pell inquired about the date to be used for as his service, and was assured that it was February 10, 1971. (D.I. 1 at Ex. B.) As a result of some information contained in a pension rule book that his service date might be 1975 instead of 1971, Mr. Pell made the two more inquiries, on August 19, 1992 and April 28, 1998. (*Id.* at Ex.'s C, D.) [FN7] On both occasions, he was told that February 10, 1971 was the date for his pension benefit calculations. (*Id.*) However, less than two weeks before his retirement, DuPont informed Mr. Pell that 1975 was the actual service date. (D.I. 1 at ¶ 15.) As was the case in *Smith,* this pattern of events may constitute extraordinary circumstances, and, accordingly, viewing the pleadings and every inference from them in Plaintiffs' favor, Plaintiffs may have a valid equitable estoppel claim.[FN8]

> FN7. Plaintiffs discuss Mr. Pell's inquiry regarding the date used for calculating his pension benefits in their "Answering Brief in Opposition to Defendant's Motion for Judgment on the Pleadings." (*See* D.I. 13 at 4-5.) The allegations in the Complaint of DuPont's misrepresentations in 1991, 1992, 1998 and 1999 are sufficient for a determination that Plaintiffs may be able to prove extraordinary circumstances.
>
> FN8. DuPont argues that under "Third

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22466196 (D.Del.), 31 Employee Benefits Cas. 2035
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

Circuit law, it is well-established that ERISA precludes an employer from making 'oral or informal modifications' to employee benefit plans." *Abramowicz v. Rohm and Haas Co.,* C.A. 00-4745m, 2001 U.S. Dist. LEXIS 17693, at *25 (E.D.Pa. Oct. 30, 2001). Even if the documents given to Mr. Pell by DuPont can be classified as informal documents under *Abramowicz,* Plaintiffs may be able to establish the necessary elements of an equitable estoppel claim under *Curcio* and *Smith,* for the reasons described herein.

V. Conclusion

Under the Rule 12(c) standard governing the court's review of the Motion, there are facts which, if proved, could serve as a basis for relief.

Accordingly, IT IS HEREBY ORDERED that DuPont's Motion for Judgment on the Pleadings (D.I.7) is DENIED.

D.Del.,2003.
Pell v. E.I. duPont de Nemours & Co. Inc.
Not Reported in F.Supp.2d, 2003 WL 22466196 (D.Del.), 31 Employee Benefits Cas. 2035

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.