IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIKE V. MATA,<br><br>Plaintiff,<br><br>v.<br><br>E. I. DU PONT DE NEMOURS AND COMPANY, a Delaware corporation; E. I. DU PONT DE NEMOURS AND COMPANY, Plan Administrator; and PENSION AND RETIREMENT PLAN,<br><br>Defendants. | ) | Civil Action No. 05-423-KAJ |

**MEMORANDUM OPINION**

---

John M. Stull, Esq., 1300 North Market Street, Ste. #700, P.O. Box 1947, Wilmington, Delaware 19899; Counsel for Plaintiffs.

Kathleen Furey McDonough, Esq., Sarah E. Diluzio, Esq., Potter Anderson & Corroon LLP, 1313 North Market Street, P.O. Box 951, Wilmington, Delaware 19899; Counsel for Defendant.

---

October 16, 2006
Wilmington, Delaware



**JORDAN, District Judge**

## I. INTRODUCTION

This case involves claims under the Employee Retirement Income Security Act ("ERISA") brought by Mike V. Mata against E.I. du Pont de Nemours & Co. Inc., a Delaware corporation; E. I. du Pont de Nemours and Company, Plan Administrator; and the DuPont Pension and Retirement Plan (collectively, "DuPont"). Mr. Mata, a former DuPont employee, alleges that he is entitled to certain benefits under the DuPont Pension and Retirement Plan (the "Plan") (Docket Item ["D.I."] 9 at ¶¶ 16-21), and that DuPont breached its fiduciary duties in administering the Plan. (*Id.* at ¶¶ 22-28.) DuPont denies that Mr. Mata is entitled to the benefits he seeks (D.I. 10 at ¶¶ 16-21), and further denies that it breached its duties to Mr. Mata. (*Id.* at ¶¶ 22-28.) Before me now is a Motion for Summary Judgment filed by the Plaintiff ("Plaintiff's Motion"), and a Motion for Summary Judgment filed by DuPont ("DuPont's Motion"). This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, DuPont's Motion will be granted and Plaintiff's Motion will be denied.

## II. BACKGROUND[1]

### A. *Mr. Mata's Prior Employment with Nason*

On May 8, 1989, Mr. Mata began working for Nason Refinish Paint, a division of The O'Brien Corporation ("Nason"). (D.I. 35 at A3:25-A4:1; D.I. 37 at A113; D.I. 47 at 2, ¶1.) Nason employees did not participate in a pension plan. (D.I. 37 at A114.) DuPont acquired Nason on October 31, 1991 (D.I. 35 at A4:1-6; D.I. 38 at 3; D.I. 34 at 5), and Mr. Mata became a DuPont employee on November 1, 1991. (D.I. 35 at A5:2-5; D.I. 37

---

[1] The following background information is drawn from the parties' submissions and is cast in the light most favorable to the plaintiff.

at 3.) After DuPont acquired Nason, Mr. Mata attended a national sales meeting held by DuPont. (D.I. 39 at A17:9-12.) During a break-out session, Mr. Frank J. Lutz, DuPont's Employee Relations Manager, conducted a question and answer session to explain the DuPont benefits available to Nason employees. (D.I. 38 at 5; D.I. 39 at A17:4-25.) Mr. Mata testified that he did not remember Mr. Lutz discussing DuPont's pension plan, which "lead to confusion" regarding the details of the pension plan. (D.I. 39 at A18:1-8; D.I. 38 at 5.)

*B. Pension Benefits Available to Nason Employees Under the DuPont Plan*

When Mr. Mata became a full-time DuPont employee effective November 1, 1991, he became eligible for benefits under the DuPont Plan. (D.I. 35 at A58.) The Plan provides:

> The administration of this Plan is vested in the Board of Benefits and Pension appointed by the Company. The Board may adopt such rules, or delegate to one or more persons its authority to make initial determinations, as it may deem necessary for the proper administration under the Plan. The Board of Benefits and Pensions retains discretionary authority to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan. . . .

(D.I. 36 at A84.) The Plan also states that DuPont "may grant pension. . .rights under this Plan in recognition of those which had been accrued under the pension or retirement plan of another company." (*Id.* at A103-104.) It further states that DuPont "may prescribe reasonable rules" regulating the recognition of rights accrued under acquired companies' pension plans, "such rules to be uniformly applicable to all employees and former employees affected thereby." (*Id.* at A104.)

The Plan allows for both "normal retirement" benefits and "early retirement" benefits. (D.I. 35 at A58; D.I. 36 at A85.) A full-time employee is eligible to receive

"normal retirement" benefits, defined as an unreduced pension, if he is at least sixty-five years old and has at least fifteen years of service. (D.I. 35 at A58; D.I. 36 at A85.) A full-time employee is eligible to receive "early retirement benefits" if he is at least fifty years old and has at least fifteen years of service. (D.I. 35 at A58; D.I. 36 at A85.) An employee qualifying for "early retirement benefits" will receive an unreduced pension if he is between the ages of fifty-eight and sixty-five, and his service and age add up to eighty-five years or more. (D.I. 35 at A58; D.I. 36 at A86.) Otherwise the pension is reduced depending on the employee's age and years of pension-eligible service. (D.I. 36 at A86.) For example, a full-time employee who retires at the age of fifty and has fifteen years of pension-eligible service will have his pension reduced by 50%. (*Id.*)

The Plan defines "service" as "the length, in years and fractions of a year, of an employee's period of 'continuous service' for computing the amount of a pension as determined under the provisions of the Company's Continuity of Service Rules." (*Id.* at A98.) The DuPont Summary Plan Description ("Plan Summary") also states that "length of service for benefit accrual purposes is 'continuous service' as determined under the Company's Continuity of Service Rules." (D.I. 35 at A60.) Mr. Mata does not recall receiving the Plan Summary specifically during the course of his employment with DuPont, but admits that he "could have received it" and may have seen it "floating around in people's offices" or on DuPont's website. (*Id.* at A11:2-3, 8-9, 11-16.) Mr. Mata accessed the document on DuPont's website when he began to have questions regarding his eligibility to receive pension benefits. (*Id.* at A10:10-17.) The Continuity of Service Rules provide that "service" includes "service to the extent specified by the DuPont Company's Board of Benefits and Pensions (the 'Board') or its delegate

with. . .[c]ompanies the property and business of which were acquired, in whole or in part, by the DuPont Company subsequent to January 1, 1920." (D.I. 36 at A107.)

On October 22, 1991, Mr. Lutz sent George Hollodick, DuPont's Pensions and Benefits Manager, a letter proposing that "Nason employees begin accruing DuPont service for pensions effective on their DuPont date of hire" because "[Nason] employees [did] not participate in a pension plan." (D.I. 37 at A114.) Although, for pension calculation purposes, Nason employees would not receive credit for the pre-DuPont employment, Mr. Lutz did recommend that DuPont recognize Nason service for other types of DuPont benefit plans, including: savings and investment, total and personal disability income, vacation, and dental. (*Id.*) On October 28, 1991, Mr. Hollodick, on behalf of the DuPont Board, sent Mr. Lutz a letter, stating that DuPont would recognize "service and eligibility for [Nason employees to participate] in the Pension Plan from [the] date of acquisition, November 1, 1991." (*Id.* at A116.) The letter also stated that DuPont would recognize Nason service "for purposes of eligibility for participation in [the other benefit plans Mr. Lutz recommended]." (*Id.*)

On October 30, 1991, DuPont sent a letter addressed to all Nason employees discussing the transition from Nason's Benefits Plan to the DuPont Plan (the "1991 Benefits Letter"). (*Id.* at A120.) The letter stated explicitly that when Nason employees signed up for benefits under the Plan, they should identify themselves "as being in the Nason acquisition, since [DuPont was] recognizing Nason service for most of. . .Du Pont['s] benefits – the most notable exception [being] Du Pont's pension plan." (*Id.*) Mr. Mata alleges that he did not see this letter until June 2004. (D.I. 39 at A23:21-25.)

On September 25, 1992, DuPont sent another letter addressed to all Nason employees, discussing various issues relating to benefits (the "1992 Benefits Letter"). (D.I. 37 at A121.) The letter stated that "[w]hen Nason employees joined DuPont on November 1, 1991, they were granted DuPont service, except for pensions and severance pay, for their years of Nason employment." (*Id.*) Mr. Mata again alleges that he did not see this letter until June 2004. (D.I. 39 at A24:10-13.)

On January 31, 2000, Mr. Mata received a letter from DuPont, indicating that his "adjusted service date" was changed from November 1, 1991 to May 8, 1989. It explained that the change was made "in accordance with the Continuity of Service Rules and may affect [his] accrued Pension benefit under the Pension Plan." (D.I. 37 at A119.)

*C. Mr. Mata's Application for Early Retirement Pension Benefits*

In 2004, Mr. Mata began to hear rumors that there would be a reduction in force in DuPont's Performance Coating business, where he worked. (D.I. 35 at A17:20-18:15; D.I. 37 at A138.) In April 2004, DuPont solicited employees who wished to be included within the reduction in force to express their interest. (D.I. 35 at A18:5-19:23; D.I. 37 at A138; D.I. 37 at 3.) Employees who were selected for the reduction in force would be eligible to participate in DuPont's career transition program and receive severance pay. (D.I. 35 at A18:13-25; D.I. 37 at A138.) On April 21, 2004, Mr. Mata signed a document entitled "Expression of Interest to Be Terminated for Lack of Work", indicating that he wished to be considered "for involuntary termination of [his] employment with DuPont." (D.I. 37 at A138.)

In 2004, Mr. Mata requested and received a pension estimate based on a separation date of May 31, 2004. (*Id.* at A47-52.) The estimate is dated January 23, 2004, but Mr. Mata claims that the date is incorrect because "we weren't discussing any of this at that point." (D.I. 39 at A27:17-18.) The estimate indicated that his adjusted service date was May 8, 1989. (D.I. 35 at A48.) It revealed that he had acquired 14.21 years of vesting service,[2] corresponding with May 8, 1989, the date on which he began working for Nason. (*Id.*) It also revealed that he had acquired only 12.58 years of benefit service,[3] corresponding with November 1, 1991, the date on which Mr. Mata became a full-time DuPont employee.[4] (*Id.*) In addition, it identified his "Benefit Commencement Date" as August 1, 2011, the month after his 60th birthday, and his "Earliest Unreduced" benefit commencement date as August, 2016, the first of the month following his 65th birthday. (*Id.*)

---

[2] "Vesting service" refers to service related to eligibility for a "nonforfeitable right to a deferred pension." (D.I. 36 at A90; *see also* D.I. 35 at A60.) A full-time employee becomes vested if he is terminated for any reason other than retirement "and (1) he has had a least 5 years of service or (2) he has reached the normal retirement age as set forth [under the Plan.]" (D.I. 36 at A90; *see also* D.I. 36 at A74.) A "deferred pension" is a postponed pension payment an employee will receive when he becomes eligible to receive benefits under the Plan and applies for them. (D.I. 36 at A74, A91.)

[3] "Benefit service" refers to service counted towards an employee's eligibility for benefits under the Plan, such as early retirement. (D.I. 35 at A60-61.) It also refers to service used in the calculation of an employee's monthly pension payments. (*Id.* at A60.)

[4] DuPont did not include in Mr. Mata's pension service calculation the time that Mr. Mata was on leave of absence without pay, from September 17, 2001 through November 4, 2001. (D.I. 37 at A131.) Although Mr. Mata challenged that decision in his "Level 2" appeal to the Board (*id.* at A133-134), he did not include that dispute in his complaint.

In late May or early June of 2004, Mr. Mata was discussing his impending termination with coworkers and considered for the first time that he may be eligible for early retirement benefits. (*Id.* at A20:11-21:14.) He contacted Patty Drysdale, a DuPont human resources representative for the Performance Coatings business, about that possibility. (*Id.* at A22:1-3; D.I. 37 at 3.) Ms. Drysdale told him that she believed he could retire and encouraged him to contact the DuPont Connection for retirement benefits.[5] (*Id.* at A26:21-27:1.) On or about May 28, 2004, Mr. Mata contacted the DuPont Connection to apply for early retirement. (*Id.* at A27:2-5; D.I. 37 at A122.) The DuPont Connection informed him that he was not eligible for early retirement because he had not acquired the requisite fifteen years of pension-eligible service. (D.I. 35 at A27:7-9.) On or about June 8, 2004, he challenged that decision but again was denied eligibility. (*Id.* at A27:8-9; D.I. 37 at A122.) Mr. Mata returned to Ms. Drysdale and, after further inquiry, she discovered and produced the 1991 and 1992 Benefits Letters, which explained the denial. (D.I. 35 at A27:10-22.)

On April 30, 2004, Mr. Mata's last day of employment with DuPont, he met with Ross Morgan, his direct supervisor, to fill out a termination form. (D.I. 41 at B5-7; D.I. 39 at A32:22-33:15.) The termination form stated that the reason for termination was "lack of work." (D.I. 4 at B5.) Mr. Morgan marked an "X" next to "CTP – Pension Eligible," indicating that Mr. Mata was eligible to receive pension benefits. (*Id.* at B6.)

---

[5] It is not clear from the record exactly what the DuPont Connection is or what the Board has authorized it to do. However, the record suggests that the DuPont Connection acts as an arm of DuPont in assisting current and former DuPont employees with questions regarding benefits (*see, e.g.*, D.I. 37 at A122), and in making benefit eligibility determinations. (*See, e.g.*, *id.* at A130.) If an employee disagrees with such a determination, he or she may appeal to the Board. (*See, e.g.*, *id.* at A129.)

Mr. Mata admitted that the document did not specify that he was eligible for early retirement benefits, only that he was eligible to receive some type of pension benefit. (D.I. 39 at A33:16-20.) He will receive pension benefits under the Plan upon reaching "normal retirement age." (D.I. 47 at 5, ¶36.)

On May 31, 2005, Mr. Mata submitted a "Level 1" appeal to the DuPont Determination Review Team of the DuPont Connection (the "Review Team"), requesting that his prior service with Nason be applied to his years of eligible pension service. (D.I. 37 at A122-26.) On June 28, 2005, the Review Team denied his request. (*Id.* at A130.) On July 25, 2005, he initiated a "Level 2" appeal to the Board. (*Id.* at A132-34.)[6] On September 27, 2005, Mr. Andrew Lesser, Delegate of the Board of Benefits and Pensions, notified him that he was not eligible for early retirement benefits, and that he had no further rights of appeal within DuPont. (*Id.* at A135-36.)

Mr. Mata testified at his deposition in this case that, after he was terminated, he received seven monthly payments of $5,008.33, plus a final payment of $2,713.01, and insurance benefits, all as part of a severance package. (D.I. 39 at A21:21-22:14.) He claimed that he received one month's pay for every two years of service, which signified that DuPont recognized fifteen years of service when it calculated his severance pay. (*Id.* at A22:9-23:2.)

---

[6] Mr. Mata first submitted a request for a "Level 2" appeal to the Board on June 1, 2005, before the Review Team had an opportunity to respond to his first appeal. (D.I. 37 at A127.) The Board accepted this appeal at first, because it believed that he had completed his "Level 1" appeal. (*Id.* at A128.) When the Board discovered that he had not completed his "Level 1" appeal, it informed him that it had withdrawn his appeal. (*Id.*) It also informed him that he could submit a "Level 2" appeal if his "Level 1" claim was denied by the Review Team. (*Id.*)

*D. Other Former Nason Employees*

Mr. Mata alleged in his Complaint that two other former Nason employees, Larry Sayer and William McConachie, received "full pension benefits" despite standing in the same position in which Mr. Mata finds himself. (D.I. 9 at ¶ 20.) Mr. Lesser submitted an affidavit, testifying that DuPont has not recognized the prior service of Mr. Sayer and Mr. McConachie with Nason for pension purposes. (D.I. 37 at A141-42.) Mr. Lesser also testified that DuPont has "consistently applied the terms of the Plan, Continuity of Service Rules, and Service Recognition document for former Nason employees." (*Id.* at A142.)

## III. STANDARDS OF REVIEW

*A. Standard for Summary Judgement*

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In determining whether there is a triable dispute of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, Rule 56(c) requires that the non-moving party "do more than simply show that there is some metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

*B. Standard of Review Under ERISA*

The Supreme Court has stated that, where an ERISA plan gives the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the appropriate standard of review for a trial court to apply is abuse of discretion. *Firestone Tire & Rubber Co. v. Bruck*, 489 U.S. 101, 115 (1989). That is, a court may overturn a plan administrator's decision only if that decision is arbitrary and capricious, which is defined as being "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 387 (3d. Cir. 2000). It is appropriate for courts to apply this standard as long as the plan administrator is not operating under a conflict of interest. *Id.* at 383 (citing *Firestone*, 489 U.S. at 111). An employer's establishment of a plan and creation of an internal benefits committee vested with discretion to interpret the plan's terms and administer benefits does not "typically constitute the kind of conflict of interest mentioned in *Firestone*." *Id.*

Here, the Plan provides that the Board "retains discretionary authority to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan." (D.I. 36 at A84.) Because Mr. Mata has not alleged that DuPont is operating under a conflict of interest, the determination of the Board regarding Mr. Mata's eligibility for early retirement benefits is governed by the abuse of discretion standard set forth in *Firestone*.

## IV. DISCUSSION

### *A. Pension Benefits to Which Mr. Mata Is Entitled Under the Plan*

Mr. Mata alleges that DuPont "arbitrarily and capriciously denied his full monthly benefit entitlement from the Plan." (D.I. 9 at ¶¶ 19-20.) He claims that, for purposes of pension calculations, DuPont should recognize his service at Nason, which would make him eligible for early retirement pension benefits under the Plan. (D.I. 38 at 6.) ERISA § 502(a)(1)(B) allows a beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights as to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). According to the terms of the Plan, Mr. Mata is not entitled to early retirement pension benefits. Nor has Mr. Mata adduced any evidence to indicate that DuPont should be estopped from enforcing the Plan. It is thus clear that the Board did not abuse its discretion in denying Mr. Mata the benefits he seeks, and summary judgment for DuPont is appropriate.

The Plan authorizes the Board to administer the Plan and "to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan. . . ." (D.I. 36 at A84.) It states that the Board "may prescribe reasonable rules" regulating the

recognition of rights accrued under acquired companies' pension plans. (*Id.* at A104.) When DuPont acquires another entity, the Board determines to what extent prior service with the acquired entity will be recognized as service for Plan purposes. The Plan defines "service" as "the length, in years and fractions of a year, of an employee's period of 'continuous service' for computing the amount of a pension as determined under the provisions of the Company's Continuity of Service Rules." (*Id.* at A98.) The Plan Summary states that the "length of service for benefit accrual purposes is 'continuous service' as determined under the Company's Continuity of Service Rules." (D.I. 35 at A60.) The Continuity of Service Rules specify that "service" includes "service to the extent specified by the Du Pont Company's Board of Benefits and Pensions or its delegate with. . .[c]ompanies the property and business of which were acquired, in whole or in part, by the DuPont Company subsequent to January 1, 1920." (D.I. 36 at A107.)

On October 28, 1991, the Board decided that DuPont would recognize "service and eligibility for [Nason employees to participate] in the Pension Plan from [the] date of [DuPont's] acquisition [of Nason], November 1, 1991." (D.I. 37 at A116.) The Board endeavored to notify all Nason employees of that decision on two occasions. The first occasion was on October 30, 1991, when DuPont sent a letter addressed to all Nason employees, discussing the transition from Nason's Benefits Plan to the DuPont Plan. (*Id.* at A120.) That letter stated explicitly that when Nason employees signed up for benefits under the Plan, they should identify themselves "as being in the Nason acquisition, since [DuPont was] recognizing Nason service for most of. . .Du Pont['s] benefits – the most notable exception [being] Du Pont's pension plan." (*Id.*) The

second occasion was on September 25, 1992, when DuPont sent another letter addressed to all Nason employees, explaining various issues relating to benefits. (*Id.* at A121.) The letter stated that "[w]hen Nason employees joined DuPont on November 1, 1991, they were granted DuPont service, except for pensions and severance pay, for their years of Nason employment." (*Id.*)

Mr. Mata alleges that he did not see either of those letters until June 2004, after DuPont first informed him that he was not eligible for an early retirement pension. (D.I. 39 at A23:21-25, A24:10-13.) He also alleges that there was "widespread confusion as to the details of the benefits program, sufficient to impart misleading and incorrect assumptions on the part of many Nason former employees." (D.I. 38 at 7.) Although there is a question as to whether Mr. Mata received the notices that DuPont would not recognize his Nason service for its pension plan, there is no evidence contradicting DuPont's showing that notices were sent. (D.I. 35 at A27:10-22.) DuPont was required to disclose to Mr. Mata only a summary plan description and an annual report within ninety days after he became a participant or received benefits. 29. U.S.C. § 1024(b)(1). The evidence shows that DuPont fulfilled that responsibility. Although Mr. Mata does not recall specifically receiving the Plan Summary during the course of his employment with DuPont, he admits that he "could have received it" and may have seen it "floating around in people's offices" or on DuPont's website. (D.I. 35 at A11:2-3, 8-9, 11-16.) The Plan Summary plainly states that "length of service for benefit accrual purposes is 'continuous service' as determined under the Company's Continuity of Service Rules." (D.I. 35 at A60.) Mr. Mata has not alleged that DuPont refused to disclose how it defined "service" under its Continuity of Service Rules, nor has he provided evidence

showing that DuPont misled him in some fashion. In fact, when Mr. Mata did apply for early retirement benefits, DuPont immediately told him that he was not eligible under the Plan because he had not acquired the requisite fifteen years of pension eligible service. (*Id.* at A27:7-9.)

In short, the Plan gives the Board authority to determine who is eligible to receive pension benefits, and the Continuity of Service Rules, referred to in the Plan Summary, explicitly state that the Board determines to what extent DuPont will recognize service with companies acquired by DuPont. There is no ambiguity in those statements. When Mr. Mata inquired about his eligibility to receive a pension benefit, DuPont informed him that he was not eligible, which was consistent with the terms of the Plan. The fact that Mr. Mata received a letter from DuPont on January 31, 2000, indicating that his adjusted service date was changed from November 1, 1991 to May 8, 1989 (D.I. 37 at A119) does not make Mr. Mata eligible for early retirement. DuPont used the adjusted service date to determine if an employee is vested, and whether he is eligible for other benefits such as savings and investment, total and personal disability income, and vacation. (D.I. 35 at A48; D.I. 37 at A112, 114, 116.) All of Mr. Mata's benefits documents clearly indicate that DuPont did not use his adjusted service date to determine whether he was eligible for early retirement. (D.I. 35 at A48; D.I. 37 at A112.) Moreover, none of the Plan documents state that DuPont will use an employee's adjusted service date to determine pension eligibility.[7]

---

[7] This case is distinguishable from my recent decision in *Pell v. E.I. Du Pont de Nemours & Co. Inc.*, No. CIV A 02-21KAJ, 2006 WL 2864604 (D. Del. Oct. 6, 2006), in which I ruled after trial that DuPont was equitably estopped from enforcing an aspect of the Plan. *Id.* at *14. In *Pell*, DuPont misrepresented on several occasions over the

Mr. Mata claims he was "led to believe" he qualified for an early retirement benefit because he received a severance package based on fifteen years of service, which would include service rendered at Nason. (D.I. 38 at 5.) However, DuPont's decision to use Mr. Mata's Nason service to calculate his severance pay does not require DuPont to do the same to determine his eligibility for pension benefits. The Plan authorizes the Board to determine eligibility for benefits of any kind under the Plan. (D.I. 36 at A84.) Additionally, the evidence does not suggest that Mr. Mata relied on this information in making any employment decisions. He testified that it wasn't until after he signed a document entitled "Expression of Interest to Be Terminated for Lack of Work" that he even considered whether he may be eligible for early retirement benefits. (D.I. 47 at 3, ¶12.)

Mr. Mata raises two statutory arguments in support of his claim that DuPont should recognize his service at Nason for pension purposes. He argues that ERISA § 204, 29 U.S.C. § 1054, does not allow a plan administrator to "disregard prior service earned previous to a break-in-service or ignore service time for benefit calculation purposes once the plan participant has obtained a status of being vested." (D.I. 38 at 6.) ERISA § 204(b)(4)(A) provides:

> For purposes of determining an employee's accrued benefit, the term "year of participation" means a period of service (beginning at the earliest date on which the employee is a *participant in the plan* and which is included in a period of service required to be taken into account under section 1052(b) of this title, determined without regard to section

---

course of the plaintiff's employment that it would calculate his pension using an earlier employment-commencement date. *Id.* at *10. Here, Mr. Mata does not set forth any basis for application of equitable estoppel.

> 1052(b)(5) of this title) as determined under regulations prescribed by the Secretary which provide for the calculation of such period on any reasonable and consistent basis.

29 U.S.C. § 1054(b)(4)(A) (emphasis added). The statute defines "year of participation" for determining an employee's accrued benefits beginning on the date which the employee is a participant in the plan. ERISA § 203(b)(1) provides that, except in limited circumstances, "all years of service *with the employer or employers maintaining the plan* shall be taken into account in computing the period of service. . . ." 29 U.S.C. § 1052(b)(1) (emphasis added). Mr. Mata was not a participant under the Plan until he became a full-time DuPont employee on November 1, 1991. (D.I. 35 at A58.) Consequently, DuPont is not required to recognize any service for accrued benefits until that time. The statute does not require companies to recognize employee service to a prior employer, even if that prior employer is acquired by the employee's current employer.[8]

---

[8] The regulations implementing the statute are equally clear. 29 CFR 2530.204-2(b) states:

> For purposes of applying the accrual rules of section 204(b)(1)(D) of the Act and section 411(b)(1)(D) of the Code (relating to accrual requirements for defined benefit plans for periods prior to the effective date of those sections), all service from the date of participation in the plan as determined in accordance with applicable plan provisions, shall be taken into account in determining an employee's period of service. When the plan documents do not provide a definite means for determining the date of commencement of participation, the date of commencement of employment covered under the plan during the period that the employer maintained the plan shall be presumed to be the date of commencement of participation in the plan. The plan may rebut this presumption by demonstrating from circumstances surrounding the operation of the plan, such as the date of

Mr. Mata argues that *DiGiacomo v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 420 F.3d 220 (3d. Cir. 2005), *cert. denied*, 126 S. Ct. 1469 (2006), holds that plan administrators must take "'all years of service'. . .in calculating a participant's accrued benefit." (D.I. 38 at 6.) In *DiGiacomo*, the court resolved an inconsistency between the vesting requirements of ERISA § 203 and the benefit accrual requirements of § 204. In deciding that issue, the court discussed § 204 extensively, explaining that the statute requires plan administrators to recognize all service rendered while the employee is a participant in the plan. *Id.* at 223. Although the court held that the defendant "was required to credit [the plaintiff] with 'all years of service' in computing his accrued pension benefits," it was referring to all years of service rendered under the employer's plan, not service rendered for another employer. *Id.*[9]

For the reasons discussed, I conclude that the Board did not abuse its discretion in denying Mr. Mata the benefits he seeks.

---

> commencement of mandatory employee contributions, that participation actually began on a later date.

*See also Cent. States v. Cent. Transp.*, 472 U.S. 559, 567 n.7 (1985) (stating that "[t]he consistent view of the Secretary of Labor is that, under ERISA's minimum participation, vesting, and benefit accrual standards for pension plans, 29 U.S.C. §§ 1052, 1053, 1054, a pension plan covered by ERISA *must* award credit 'solely on the basis of service performed for a participating employer. . .'") (citation omitted).

[9] Mr. Mata asserts in his Complaint that the "Rule of Parity", 29 C.F.R. § 2530.210(g), requires DuPont to recognize his service at Nason for pension purposes. (D.I. 9 at ¶ 14.) He does not, however, include any argument on this point in connection with the cross motions for summary judgment.

*B. Breach of Fiduciary Duties*

Mr. Mata alleges that DuPont breached its fiduciary duties to him when it administered the plan. (D.I. 38 at 3-4.) ERISA provides that fiduciaries shall discharge their duties with respect to a Plan "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Additionally, fiduciaries should discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). An employer's decisions regarding the composition or design of the plan itself, including the determinations of the form or structure of the plan, do not implicate the employer's fiduciary duties. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983) (stating that ERISA does not mandate "employers [to] provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits").

Mr. Mata has not adduced evidence to demonstrate that DuPont breached its fiduciary duties in administering the Plan under ERISA. DuPont consistently has applied the terms of the Plan in its dealings with Mr. Mata. DuPont has not misinformed him or misrepresented the terms of the Plan to him. DuPont's records are clear that service rendered at Nason would not be recognized for pension purposes at DuPont. (D.I. 37 at A120, 121.) DuPont never told Mr. Mata otherwise. (D.I. 35 at A27:7-9; D.I. 37 at A122, 130, 135-36.) Even if Mr. Mata did not receive the 1991 and 1992 Benefits Letters, the DuPont Plan Summary, in conjunction with other DuPont records, defined "service" unambiguously. (D.I. 35 at A60; D.I. 36 at A107.) Mr. Mata could have inquired at any time as to whether he had obtained the service necessary to be eligible

for early retirement benefits. When he finally did inquire, DuPont promptly informed that he was not eligible. (D.I. 35 at A27:7-9.)

## V. CONCLUSION

Accordingly, I will grant DuPont's Motion for Summary Judgment, and will deny Mr. Mata's Motion for Summary Judgment. An appropriate order will follow.